**PARK SOUTH ASSOCIATES, a New York Partnership, Plaintiff,**

v.

**Richard FISCHBEIN, David Rozenholc, Herman Badillo, individually, Fischbein, Olivieri, Rozenholc & Badillo, and Does 1 through 20, Defendants.**

**No. 85 Civ. 9705 (WK).**

United States District Court, S.D. New York.

Jan. 23, 1986.

A. Richard Golub, New York City, for plaintiff.

Martin London, Paul Weiss, Rifkind, Wharton, & Garrison, New York City, for defendants.

## MEMORANDUM AND ORDER

### WHITMAN KNAPP, District Judge.

Plaintiff Park South Associates brings this action against Richard Fischbein, David Rozenholc, Herman Badillo and against their law firm, Fischbein, Olivieri, Rozenholc & Badillo seeking injunctive relief and treble damages totalling $105,000,-000.00 under the Racketeer Influenced And Corrupt Organizations Act, 18 U.S.C. §§ 1961, 1962(c) and (d) ("RICO") and asserting a pendent state law claim for abuse of process. Defendants have moved to dismiss the complaint pursuant to F.R.Civ.P., Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow defendants' motion is granted.

### FACTS

The allegations presented in the amended complaint, supplemented by plaintiff's motion papers and plaintiff's representations to the Court during extensive oral argument, drawing all inferences in plaintiff's favor and attempting chronological order where possible, paint the following picture.

Plaintiff is a New York partnership engaged in the business of ownership and management of real property. Its principal is Donald Trump.

Defendant Fischbein Olivieri Rozenholc & Badillo is a New York law firm. The individual defendants are attorneys admitted to practice in the State of New York and are partners in the law firm. Defendant Herman Badillo, as well as being a partner in the law firm, is Chairman of the State of New York Mortgage Agency (SONYMA) and is "a political figure of consequence in the City, County and State of New York." Amended complaint at paragraph 8.

In the summer of 1981 defendants obtained knowledge that plaintiff was imminently purchasing the real property and building located at 100 Central Park South, New York, New York. At that time defendants also learned that plaintiff intended to convert 100 Central Park South to a cooperative or condominium entity, or alternatively to demolish it and construct a mixed use commercial and residential structure in its place. Also in the summer of 1981, defendants commenced legal representation of the tenants of 100 Central Park South..

In August of 1981 plaintiff purchased 100 Central Park South.

Shortly thereafter, defendants, on behalf of the tenants, initiated a number of legal proceedings aimed at delaying and preventing plaintiff from undertaking its above stated plans for the building.

Defendants, acting on behalf of tenants in sixty of the building's apartments, filed complaints against plaintiff with the New York State Department of Housing and Community Renewal ("DHCR") alleging harrassment and diminution of services.

Defendants, on behalf of eighteen tenants, brought actions in Landlord-Tenant Court against plaintiff alleging a decrease in service.

Seven tenants, acting on defendants' recommendations, withheld rent from plaintiff claiming that the premises were not fit for habitation, causing plaintiff to bring actions against them in Civil Court for the back rent owed. In these suits defendants raised "boilerplate defenses and counterclaims without regard to the merits therein." Amended complaint at paragraph 22.

On February 28, 1985 defendants "caused the City of New York through its Corporation Counsel to institute litigation in conjunction with defendants and a concomitant application for a preliminary injunction at the Supreme Court of the State of New York (*The City of New York v. Park South Associates, et al.,* Index No. 40489/85)." Amended complaint at paragraph 20. The relief requested was denied by the Court (Kirschenbaum, J.) both upon the original application and upon reargument.

Defendants, on behalf of tenants, applied on five separate occasions for stays in the Supreme Court and Appellate Division in order to prevent plaintiff from receiving the necessary approvals to demolish 100 Central Park South. All of these applications were denied.

Defendants have used similar tactics before against other landlords in other actions. These tactics constitute defendants' *"modus operandi."* Amended complaint at paragraph 22.

During the pendency of these court and administrative proceedings, the following events also occurred.

In November of 1984 a representative of defendants offered Thomas Macari, a Park South employee, $50,000 "to work on behalf of the tenants at 100 Central Park South in a spying capacity while Macari was still employed by plaintiff." In October of 1985 Rozenholc "confirmed and reiterated such bribe to Macari." Complaint at paragraph 29.

In November, 1984 defendant Badillo stated to Trump that the administrative proceedings before the DHCR were "rigged" and that Park South should get out of 100 Central Park South. William Eimeck, Commissioner of the DHCR is a member of the board of directors of SONY-MA of which, as above stated, Badillo is Chairman.

In October, 1985 defendant Rozenholc approached Trump and stated that he and his law firm represented the Allegheny Corporation. The Allegheny Corporation owned an office building in Houston, Texas. Rozenholc offered Trump the opportunity to buy the Houston property as long as Trump would agree to give Rozenholc and his firm "a piece of the action." Amended complaint at paragraph 25. Rozenholc also offered Trump the prospect of participating in the purchase of a hotel on Lexington Avenue and East 57th Street in New York City. During these discussions Rozenholc acknowledged to Trump that these offers constituted a conflict of interest with defendants' representation of tenants at 100 Central Park South.

In November, 1985 defendants Rozenholc and Fischbein again met with Trump and offered him the opportunity to purchase the building in Houston at a favorable price. Also present at that meeting were Charles P. Horne, President of Allegheny International Realty Development Corporation, owner of the Houston property, and another officer of that corporation.

On an unspecified date in the Civil Court of the City of New York, one David Brody, an associate of defendant law firm threatened and punched Frank Kaiman, an attorney for Park South.

## DISCUSSION

Based on the foregoing, plaintiff contends that defendants have violated RICO.

18 U.S.C. § 1962(c) (RICO) provides that it is a crime for any:

> person employed by or associated with an enterprise engaged in or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

Racketeering activity is defined in 18 U.S.C. § 1961(1) to include specified state law crimes which are punishable by more than a year in jail and certain federal crimes.

Pattern of racketeering activity is defined in 18 U.S.C. § 1961(5) as at least two of the acts defined in subsection (1) committed within a ten year period.

18 U.S.C. § 1964(c) provides for a civil RICO cause of action and treble damages to a prevailing plaintiff.

Therefore, to deny this motion to dismiss, we must find that plaintiff has alleged that each defendant, acting through an enterprise, committed at least two racketeering acts. Let us turn first to the "enterprise" requirement.

1. The "Enterprise."

Plaintiff alleges two different forms of racketeering "enterprise" for purposes of RICO. It first alleges that the individual defendants acted through the enterprise of their law firm. It next alleges that all the defendants acted through the enterprises of the New York State court system, the DHCR and the Corporation Counsel by bringing, defending or "causing" actions to be brought involving Park South.

■ For the reasons that follow we conclude that the law firm is a proper "enterprise" but that the court system, DHCR, and Corporation Counsel are not. Since the individual defendants are alleged to have acted through the law firm, the first conclusion satisfies the "enterprise" requirement as to them. However, since the law firm is only alleged to have acted through the enterprises of the courts, DHCR, and Corporation Counsel, the second conclusion finding necessitates dismissal of the law firm from this action.

It is well settled within this circuit that a defendant may not fulfill both the role of "person" and "enterprise" for purposes of § 1962(c), *Bennett v. United States Trust Co.* (2d Cir.1985) 770 F.2d 308. Therefore, in order to be a defendant in this action, the law firm must have been acting through an enterprise other than itself. Plaintiff alleges that the law firm engaged in the course of proscribed conduct through the enterprises of the New York Courts, the DHCR, and the Corporation Counsel. This presents the question of whether a defendant can violate RICO by participating as a mere litigant in a court system or before an administrative body.

■ Plaintiff has presented us with considerable authority for the proposition that a court system or an administrative agency can be an enterprise for purposes of RICO. However, in each such case, at least one of the defendants was an employee of the governmental "enterprise" who had allegedly corrupted his office in the commission of the racketeering acts. *See e.g. United States v. Qaoud,* (6th Cir.1985) 777 F.2d 1105, (one of the defendants was a judge); *United States v. Murphy,* (7th Cir.1985) 768 F.2d 1518 (defendant was an associate judge of a county circuit court); *United States v. Angelilli* (2d Cir.1981) 660 F.2d 23 (defendants were New York City Marshals). There is no such allegation here. The crux of this issue is whether the defendant did "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. 1962(c). Mere use of the courts as a litigant does not satisfy the requirement that the defendant "conduct" or "participate in the conduct" of the court's affairs. *See Averbach v. Rival Manufacturing Company* (E.D.Penna 1985) # 85–2794 slip op. at 4. Therefore, a litigant can not transform the court system into an illegal enterprise absent some complicity with an employee of that court who does actually conduct or participate in the conduct of the court's affairs. It follows that the complaint as to the law firm must be dismissed for want of an approriate "enterprise."

2. Predicate Racketeering Acts.

Let us now turn to the predicate racketeering acts.

### A. The Attempted Bribe of Macari.

■ Plaintiff alleges that defendants' unaccepted offer of a $50,000 bribe to Thomas Macari violated two New York state statutes, section 180.03 of the New York Penal Law, commercial bribery, and section 215.00 of the New York penal law, bribing a witness, and one Federal statute, 18 U.S.C. § 1512, tampering with a witness. Each of these violations would fall under the definition of a predicate "racketeering act" under RICO. However, we find that no violation of any of those statutes has been pleaded.

As defined in section 180.03 of the New York Penal Law, to be guilty of commercial bribery in the first degree, a Class E felony punishable by more than a year in jail, a defendant's acts must cause "economic harm to the employer or principal in an amount exceeding two hundred fifty dollars." No such harm has been alleged. Nor is it conceivable that Park South has suffered any harm from the alleged offer of a bribe which was concededly declined.

■ Plaintiff's claim that this attempted bribe violatates 18 U.S.C. § 1512 is equally unavailing. The terms of that statute are defined in 18 U.S.C. § 1515 which speaks exclusively of proceedings "before a judge or court of the United States." The statute does not apply to state court proceedings. At the time of the alleged attempted bribe, the only proceedings in existence involving these parties were in state courts or before state administrative bodies.

■ Plaintiff responds to this argument by pointing out that New York has a statute which proscribes similar conduct. Indeed it does. Section 215.00 of the New York Penal Law provides as follows:

A person is guilty of bribing a witness when he confers, or offers or agrees to confer, any benefit upon a witness or a person about to be called as a witness in any action or proceeding upon an agreement or understanding that (a) the testimony of such witness will thereby be influenced, or (b) such witness will absent himself from, or otherwise avoid or seek to avoid appearing or testifying at, such action or proceeding.

Plaintiff's complaint alleges that Macari was offered a bribe "to work on behalf of the tenants at 100 Central Park South in a spying capacity while Macari was still employed by plaintiff." Amended complaint at paragraph 15. There is absolutely no suggestion in the complaint, nor was one advanced during oral argument, that Macari was offered a bribe to influence any testimony he might give or to induce him not to testify. Therefore no violation of section 215.00 has been pleaded.

### B. The Offers made Directly to Trump.

Plaintiff alleges that defendants' offer to Trump of participation in other real estate transactions constituted both extortion, in violation of section 155.05 of the New York Penal Law, and commercial bribery. We cannot agree.

■ There is no allegation that defendants discussed 100 Central Park South with Trump at the meetings involving the Houston property and the Lexington Avenue hotel, except for the rather incredible allegation that Rozenholc told Trump that he knew he was in a conflict of interest situation. But even if defendants had offered Trump an interest in these deals as an inducement to settle this case, transmitting an offer to the principle of a partnership which is an adversary in litigation in contemplation of settling the case is not an extortionate act. Indeed, if it were, every lawyer who tries to settle a case might end up behind bars.

■ Further, assuming *arguendo* that this offer to the principal of Park South constitutes a bribe, which seems unlikely, the allegation of commercial bribery still fails, for the same reason that plaintiff's other commercial bribery allegation fails. Plaintiff has alleged no facts which would indicate that Park South suffered any harm as a result of this offer, which is a pleading requirement under section 180.03 of the New York Penal Law, as stated above.

C. Defendants' Representation of the Tenants as "Extortion".

■ Plaintiff's claim that the defendants violated the Hobbs Act, 18 U.S.C. § 1951 can be easily dispensed with. The Hobbs Act requires that a defendant's extortionate acts be induced by "wrongful use of actual or threatened force, violence, or fear, or under color of official right." Nothing in the pleadings alleges anything to do with force, violence or fear. With the possible exception of the alleged threat attributed to Badillo that administrative proceedings before the DHCR were "rigged", discussed below, there is no allegation that any of the defendants were public officials or did anything under color of official right. Therefore no violation of the Hobbs Act has been alleged.

■ Plaintiff's claim that by instituting a number of supposedly meritless lawsuits in hopes of gaining a favorable resolution of the conflict at 100 Central Park South, defendants were committing larceny by extortion in violation of section 155.05 of the New York Penal Law deserves equally short shrift.

The provisions of Section 155.05 of the New York Penal Law upon which plaintiff relies are the following:

A person obtains property by extortion when he compels or induces another to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:

\* \* \* \* \* \*

(viii) Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely; or ...

(ix) Perform any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.

Since none of the defendants is a public servant subsection (viii) does not apply here. Subsection (ix) requires acts which would not materially benefit the actor. The acts allegedly performed by defendants were performed by lawyers on behalf of the tenants of 100 Central Park South. Those tenants had hired the lawyers to represent them. The tenants wanted to thwart Park South's plans for the building. It appears that they have been, in some measure, successful. It would be ludicrous to conclude that the acts complained of were not undertaken for the material benefit of the lawyers and the clients who they were representing.

Plaintiff's allegations may make out a state court action for abuse of process. But plaintiff has not pled extortion.

■ Plaintiff alleges that defendants somehow controlled a state agency, the DHCR and a city agency, the Corporation Counsel, both of whom brought lawsuits against plaintiff. Plaintiff fails to allege how defendants achieved this control. Moreover, even if defendants had caused the DHCR and Corporation Counsel to act as they have, plaintiff has not alleged anything extortionate about those proceedings. No one likes to be sued. Parties sometimes even settle lawsuits that they consider to be extortion. But that does not make the filing of a complaint in such an action extortionate.

D. The Assault.

■ Assault is not a crime that can constitute a predicate "racketeering act" under RICO, 18 U.S.C. § 1961(1) and plaintiff does not allege that the assault in question was part of an attempted larceny by extortion.

E. Mail Fraud.

■ The only allegation of mail fraud in the Amended Comlaint reads as follows. "Moreover such defendants further engaged in a pattern of racketeering through the regular and systematic use of the mails." Amended Complaint at paragraph

17. Such utterly conclusory pleadings which allege no facts in support of the use of the mails or the alleged underlying fraud can not possibly withstand a 12(b)(6) motion.

**F. The Threat of a Rigged Proceeding before the DHCR.**

 As Chairman of the State of New York Mortgage Association, ("SONYMA"), defendant Badillo sits on the same board of directors as does William Eimeck, Commissioner of the DHCR. By virtue of this rather tenuous association, plaintiff seeks to characterize Badillo as a public official for purposes of the various extortion statutes and then to characterize his alleged threat that the DHCR proceedings were rigged as a violation of the Hobbs Act and the New York extortion statute. Although we doubt that Badillo's alleged threat was made "under color of official right" for purposes of the Hobbs Act or involved the "use or abuse" of a position as a public servant for purposes of New York law, it is not necessary to reach those questions. Plaintiff must plead two racketeering acts. Even if this "threat" by Badillo constitutes one such act, plaintiff's complaint still must be dismissed for failure to allege a pattern of racketeering activity, as defined in 18 U.S.C. § 1961 which requires at least two such acts within a ten year period.

3. Plaintiff's Request to Re-Plead.

At oral argument plaintiff requested that should we dismiss the complaint, it be permitted to re-plead. The amended complaint in this action was drafted by highly competent and experienced counsel in response to the motion to dismiss herein discussed. Further, at oral argument, plaintiff was given every opportunity to inform the Court of any further facts it could plead in support of its allegations. Where relevant, those facts have been considered in deciding this motion. Since it appears that further pleading would merely waste the time and resources of the litigants as well as divert scarce judicial resources, we deny plaintiff's motion to re-plead and dismiss the complaint with prejudice.

SO ORDERED.