**OVERNITE TRANSPORTATION COMPANY, Plaintiff,**

v.

**TRUCK DRIVERS, OIL DRIVERS, FILLING STATION AND PLATFORM WORKERS UNION LOCAL NO. 705, Defendant.**

No. 88 C 7955.

United States District Court, N.D. Illinois, E.D.

Jan. 31, 1989.

---

Allan E. Lapidus, Randal L. Golden, Veder, Price, Kaufman & Kammholz, Chicago, Ill., for plaintiff.

William A. Widmer, III, Sheldon M. Charone, John F. Ward, Carmell, Charone, Widmer & Mathews, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Overnite Transportation Company ("Overnite") brings this action against defendant Truck Drivers, Oil Drivers, Filling Station and Platform Workers Union Local No. 705 ("Local 705"), under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and Illinois common law. Local 705 has moved to dismiss the RICO claim on a number of grounds, and to dismiss the pendent state law claim for lack of subject matter jurisdiction. For the reasons set forth below, the motion is granted.

## THE COMPLAINT

The allegations of the complaint are simple enough: Overnite alleges that during the course of a 1984 strike by Local 705,

persons acting on the union's behalf engaged in numerous (at least 11) acts of arson (5) and violence (6) against trucks owned by Overnite. The company further alleges that the acts of arson violated Ill. Rev.Stat. ch. 38, ¶ 20–1, and were thus punishable by imprisonment for up to seven years, and that the other acts of violence against Overnite property amounted to extortion under Ill.Rev.Stat. ch. 38, ¶ 12–6, and were punishable for as many as five years. Overnite asserts that these allegations state a claim against Local 705 for participating in Overnite's affairs through a pattern of racketeering activity in violation of RICO § 1962(c). Local 705, not surprisingly, disagrees.

## DISCUSSION

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1961 defines many of these terms. An "enterprise" is "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Section 1961(4). "Racketeering activity" includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year." Section 1961(1). And a "pattern of racketeering activity" means "at least two acts of racketeering activity, one of which occurred within ten years after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." Section 1961(5).

Local 705 predicates its motion to dismiss on three grounds: that the alleged violations of Ill.Rev.Stat. ch. 38, ¶ 20–1, do not constitute extortion as that term is used in the definition of "racketeering activity";

that the alleged acts of arson do not amount to a pattern of racketeering activity; and that, although Overnite meets the definition of a RICO enterprise, Local 705's alleged unlawful acts do not constitute participation in the affairs of Overnite for the purposes of § 1962(c).

*Predicate Acts*

Ill.Rev.Stat. ch. 38, ¶ 12–6, entitled "Intimidation," provides, in pertinent part, that:

(a) A person commits intimidation when, with intent to cause another person to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:

(1) Inflict physical harm on the person threatened or any other person or on property; or

\*    \*    \*    \*    \*    \*

(3) Commit any criminal offense....

Local 705 contends that Overnite has failed to allege a violation of this paragraph, and that even if it had, such a violation does not amount to "extortion" within the definition of RICO racketeering activity.

Local 705's first argument has two prongs: It contends that acts of violence alone, without verbal threats, can never amount to "intimidation" under Illinois law because the statute requires the communication of a threat. It then argues that, even if an act can communicate a threat, Overnite has not specifically alleged that Local 705 communicated such a threat through its violent activity.

Local 705 bases its argument that ¶ 12–6 requires a verbal communication on the fact that, according to its research, no one has ever been prosecuted under this paragraph on the basis of threatening acts alone. Overnite does not contest this empirical argument, but instead contends that the fact that a predecessor to this paragraph, Ill.Rev.Stat. ch. 38, § 240 (repealed 1961), specifically required a verbal or written threat demonstrates that the Illinois legislature meant to expand the new statute to include threatening acts.

Overnite's attempt at statutory interpretation is flawed. In *People v. Hubble*, 81 Ill.App.3d 560, 563, 37 Ill.Dec. 189, 401 N.E.2d 1282 (1980), the court explained that because ¶ 12–6 was enacted as part of a complete overhaul of the Illinois criminal code, changes in the language of this paragraph from earlier statutes do not permit an inference that the legislature intended to change the elements of the crime. Thus, Overnite cannot rest its argument on the mere deletion of the need for a verbal or written threat in the new statute.

Nevertheless, Overnite's argument that threatening acts alone are enough does carry the day. For in addition to this court's inclination that a communication can occur through acts as well as words, there is an Illinois case on point. In *People v. Smalley*, 43 Ill.App.3d 600, 2 Ill.Dec. 116, 357 N.E.2d 93 (1976), the Court held that a person who commits rape also commits the lesser included crime of intimidation under ¶ 12–6 because the communication of a threat of force is an element common to both crimes, and because the rape itself constitutes both the threatening communication and the threatened act. "In the rape context the communication of a threat of force is inherent in the use of force." *Id.* at 602, 2 Ill.Dec. 116, 357 N.E.2d 93. Thus, threats communicated through acts do fall within ¶ 12–6.

■ Local 705's next challenge to Overnite's allegations of a violation of ¶ 12–6 focuses on the fact that although Overnite argues in its brief that the violent acts against Overnite property were intended to communicate a threat, no such allegation is made in the complaint. At least one Illinois court has held that a failure to charge an intent to cause another person to act renders an indictment under ¶ 12–6 invalid, *People v. White*, 29 Ill.App.3d 438, 330 N.E.2d 521 (1975).

Again, however, the court must reject Local 705's argument. Whereas Illinois law provides the substantive elements of the crimes alleged here, federal procedural rules control the pleadings. Under the Federal Rules of Civil Procedure, pleadings are to be liberally construed, *see* Rule 8(a), and a liberal construction of the complaint clearly permits the inference that the unlawful acts were undertaken to force Overnite to compromise in its bargaining with the union. Accordingly, Overnite has sufficiently alleged a violation of ¶ 12–6.

Local 705's argument that, even if Overnite has alleged such a violation of Illinois law, this conduct does not amount of extortion for the purposes of federal RICO is similarly unavailing. Local 705 concedes that the title of the statute as "Intimidation" rather than "Extortion" does not resolve the question. But it says that the fact that the statute does not require the use of threatened force to secure another's property does.

■ Yet, RICO does not require that every act in violation of a particular state statute constitute "racketeering activity" in order for some violations of the statute to do so. Section 1961(1) states only that an act of arson, extortion, etc. must be chargeable under state law (and punishable by more than one year imprisonment) in order to become a RICO predicate act. Local 705's alleged wrongdoing was extortionist—threats of force were used to secure a better collective bargaining agreement[1]—and it violated Illinois law. It was, therefore, racketeering activity within the terms of § 1961(1).

---

1. Local 705 contends that the Supreme Court held in *United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), that the use of force to obtain a better collective bargaining agreement does not constitute extortion. That most certainly is not what the court held. In *Enmons*, the Court construed the Hobbs Act, 18 U.S.C. § 1951, and held that it did not reach the use of force to achieve legitimate union objectives because of the definition of extortion under this Act. More specifically, the Court reasoned that Congress' definition of extortion as the *"wrongful* use of actual or threatened force" (emphasis added) was intended to exclude union violence for legitimate union objectives since including such union activity within the Act would result in an unprecedented federal intrusion into state criminal law. Nothing in the Court's opinion even remotely suggests that such activity is not extortion within the generic meaning of that term employed by the RICO statute, *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

*Pattern of Racketeering Activity*

In arguing that its alleged wrongdoing did not amount to a pattern of racketeering activity, Local 705 assumed incorrectly that this court would find that only the acts of arson were RICO predicate acts. With this court's ruling that the acts of extortion were predicate acts as well, the union's argument weakens measurably. Nevertheless, its position that the alleged crimes were not a pattern because they were all part of a single scheme to influence a single collective bargaining agreement remains intact and thus must be addressed.

■ In the Seventh Circuit, multiple predicate acts in furtherance of a single scheme can amount to a pattern of racketeering activity. Whether they do or not is

> a fact-specific inquiry encompassing many factors, including: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; (4) and the occurrence of distinct injuries.

*Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir.1988) (citations omitted).

■ Although applying these factors can at times be difficult, in this case it is not. For the Seventh Circuit has made abundantly clear that 11 predicate acts over the course of seven months, each causing a distinct injury, constitute a pattern of racketeering activity despite the fact that only one scheme is involved and only one person injured. *See Liquid Air Corp. v. Rogers,* 834 F.2d 1297 (7th Cir.1987); *Appley v. West,* 832 F.2d 1021 (7th Cir.1987); *Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985). Thus, plaintiff has alleged a pattern of racketeering activity here.

*Participation in the Conduct of an Enterprise*

■ To establish a violation of § 1962(c), however, it is not enough to prove that the defendant engaged in a pattern of racketeering activity. Congress enacted RICO to deal with the "criminal infiltration and manipulation of organizational structures," *United States v. Neapolitan,* 791 F.2d 489,

500 (7th Cir.1986), and articulated this goal in the concept of an "enterprise." Thus, § 1962(c) requires that the defendant have been "employed by or associated with [an] enterprise" and have "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

Local 705 argues that, as a union in the midst of a strike against Overnite, it was not conducting or participating in the conduct of the company's affairs at all, no less through a pattern of racketeering activity. Overnite, however, points to a recent opinion by the Court of Appeals for the District of Columbia holding that a union engaged in a strike against a company does participate indirectly in the company's affairs when it engages in a pattern of racketeering activity in furtherance of the strike, *Yellow Bus Lines, Inc. v. Local Union 639,* 839 F.2d 782 (D.C.Cir.1988).

In reaching this conclusion, the *Yellow Bus Lines* Court noted that there was disagreement among the courts as to the requisite nexus between a defendant's racketeering activity and the RICO enterprise. It rejected the approach taken by some courts that the defendant's acts be "helpful and necessary" to, *Bank of America v. Touche, Ross & Co.,* 782 F.2d 966, 970 (11th Cir.1986), or involved in the "operation or management of," *Bennett v. Berg,* 710 F.2d 1361, 1364 (8th Cir.1983), the enterprise. *Yellow Bus Lines,* 839 F.2d at 792. The Court opted instead for the more "open-ended requirement that the predicate acts relate to, or have some effect upon, the affairs of the enterprise." *Id.* at 793.

In so holding, the Court relied in part on the Seventh Circuit's ruling in *United States v. Yonan,* 800 F.2d 164 (7th Cir. 1986). In that case, a defense attorney had repeatedly bribed an assistant state's attorney in the Illinois State's Attorney's Office. The government brought a RICO indictment charging the bribery as the predicate acts and the State's Attorney's Office as the enterprise. The Seventh Circuit held that in order to be participating in the affairs of an enterprise for § 1962(c) pur-

poses, "[t]he defendant need not have a stake in the enterprise's 'goals,' but can associate with the enterprise by conducting business with it, even if in doing so the defendant is *subverting* the enterprise's goals." *Id.* at 167. Since the defense attorney was conducting business, albeit unlawful business, with the state's attorney, he was indirectly participating in the affairs of the State's Attorney's Office.

The *Yellow Bus Lines* Court read *Yonan* as standing for the proposition that a person indirectly participates in the enterprise's affairs "as long as the predicate acts formed part of a business relationship," *Yellow Bus Lines*, 839 F.2d at 794. It then reasoned that because the union had a business relationship with the company, the union was indirectly participating in the affairs of the company when the union engaged in its racketeering activity.

That analysis contains a critical flaw. Although it may be that the union was participating in the affairs of the company even when it was on strike, the union certainly was not participating in the company's affairs when it engaged in the racketeering activity. In *Yonan*, the defense attorney not only had a business relationship with the State's Attorney's Office; he was also engaging in unlawful acts as part of this relationship. Thus, the attorney was participating in the affairs of the enterprise *through* a pattern of racketeering activity. Had the defense attorney's unlawful acts been undertaken without the participation of a state's attorney, a very different situation would have been present. *See Park South Associates v. Fischbein*, 626 F.Supp. 1108, 1112 (S.D.N.Y.1986) (law firm could not be liable for conducting the affairs of a court system where it was not acting with an employee of the court system who was himself participating in the affairs of the enterprise); *cf. United States v. Dennis*, 458 F.Supp. 197 (E.D.Mo.1978) (defendant's employment by General Motors Assembly Division and collection of unlawful debts on its premises did not establish requisite nexus), *aff'd*, 625 F.2d 782 (8th Cir.1980).

Indeed, the *Yellow Bus Lines* Court did not even attempt to reconcile its reading of *Yonan* with the Seventh Circuit's test for the requisite activity-enterprise nexus. Although not set forth in *Yonan*, the Seventh Circuit has said, both before and after that case, that:

> To establish the nexus required by § 1962(c) between the racketeering activity and the affairs of the enterprise, this circuit has held that the government must show that: (1) the defendant committed the racketeering acts, (2) the defendant's position in or relation with the enterprise facilitated commission of the acts, and (3) the acts had "some effect" on the enterprise.

*United States v. Pieper*, 854 F.2d 1020, 1026 (7th Cir.1988); *United States v. Horak*, 833 F.2d 1235, 1239 (7th Cir.1987); *United States v. Blackwood*, 768 F.2d 131, 138 (7th Cir.1985).

In *Yonan*, the government had clearly satisfied the test. The defendant had committed the acts of bribery; his relationship with the state's attorney had made those acts possible; and the bribery had affected the prosecution of cases by the State's Attorney's Office.

In *Yellow Bus Lines* and here, however, the test simply is not met. Although the unions may have committed racketeering acts against the companies, and although these acts, if committed, would undoubtedly have had an impact on the companies, there is nothing in the *Yellow Bus Lines* case, nor anything here, suggesting that the striking unions' relationships with the companies facilitated their racketeering activity. The District of Columbia Circuit did not find this omission dispositive, but this court answers to a different authority. Under the law of this circuit, Overnite has failed to allege, at least for now, the requisite nexus between Local 705's alleged racketeering activity and Overnite's affairs. Accordingly, the RICO claim must be dismissed.

## CONCLUSION

Local 705's motion to dismiss the RICO claim is granted without prejudice. The

pendent state law claim is dismissed for lack of subject matter jurisdiction.