## 17332

R. F. ELLETSON, Respondent, v. DIXIE HOME STORES,
Appellant
(99 S. E. (2d) 384)

566

*Messrs. Love, Thornton, Blythe & Arnold,* of Greenville, *for Appellant,*

*P. Bradley Morrah, Jr., Esq.,* of Greenville, *for Respondent,*

*Messrs. Love, Thornton, Blythe & Arnold,* of Greenville, *for Appellant,* in reply.

July 25, 1957.

TAYLOR, Justice.

This appeal arises out of an action for malicious prosecution brought in the Court of Common Pleas for Greenville County, resulting in a verdict for $7,000.00 actual damages and $3,000.00 punitive damages.

At approximately 11:30 a. m., on or about January 29, 1955, the respondent, his wife and sister, all elderly people in the neighborhood of seventy years of age, visited appellant's large supermarket for the purpose of shopping, the ladies for the purpose of selecting groceries and respondent some canned dog food and coffee. In the proximity of the dog food was the coffee display, approximately one step away. Appellant's manager testified that he observed respondent, clad in a top coat, as he was interested in some

instant coffee and after inspecting several kinds, select a jar of one of the well-known brands, walk to the rear of the store, across the back and up the other side to the front again and across the front to where the coffee and dog food were located, all the while carrying the coffee in his hand. He placed the coffee in his pocket, selected an empty box and proceeded to place one dozen cans of dog food, weighing sixteen ounces each, in the box. He then entered the line of customers at one of the cash registers and paid for the dog food but not the coffee. As he left the store, he had taken three or four steps, when he was stopped by appellant's manager and assistant manager and asked if he had something in his pocket for which he had not paid. Respondent did not at first understand and inquired of the manager what he had said. Upon the inquiry being repeated, he felt his pocket and promptly stated that he had a jar of coffee and wished to pay for it. This offer was refused, and appellant's manager ordered respondent to accompany him through the store to the stockroom in the rear, which he did, offering again to pay for the coffee, asserting that he was innocent of any intention to take it without paying therefor. He was ordered to remain in the stockroom with the assistant manager and other employees until two city policemen arrived. Appellant's manager stated to the policemen what had happened and asked that he "be taken in."

Respondent, who does not drive, had the keys to the car in his pocket and was accompanied by the policemen into the store in order to turn the keys over to the sister, who, along with his wife, had been in the store all the while. Learning of the difficulty, she demanded an explanation, but the manager refused to discuss the matter and tersely referred her to the police. The sister testified, "I tried to get an explanation and I couldn't. I asked Mr. Burry (the manager) and he wouldn't talk to me. He seemed to me so mad he didn't know what to do." Respondent was then carried to the City Jail where he was booked on a charge of "shoplifting" and placed in a cell where he remained ap-

proximately a half hour before his sister was able to arrange bail. Thereafter, respondent was tried by a jury in the Municipal Court and found not guilty.

Upon trial of the cause from which this appeal stems, the question of what offense respondent had been charged, tried and acquitted became a matter of concern as the Municipal Court is not a Court of record. Appellant took the position that inasmuch as there is no Ordinance in the City of Greenville making "shoplifting" a crime, the warrant did not state a criminal offense had been committed. The Assistant City Attorney who represented the City in the prosecution and the officer who filed the charges were placed upon the stand, and they testified that respondent "was tried for taking a jar of coffee from the Dixie Home Store without paying for same" and acquitted. Introduced into the evidence was Section 24-58 of the Greenville City Code, which appears as follows:

"No person shall steal, take, carry away, or take possession of with intent to steal or carry away, any article of goods, choses in action, bank bills, bills receivable, of any article of personalty, or which, by law, larceny may be committed, or fixtures and parts of the soil as were severed from the freehold by an unlawful act."

Proceedings in a Municipal Court are of a summary nature and must follow the practice prescribed for Magistrates' Court in South Carolina, Section 15-901, Code of Laws of South Carolina, 1952. *City of Greenville v. Latimer,* 80 S. C. 92, 61 S. E. 224; *State v. Langford,* 223 S. C. 20, 73 S. E. (2d) 854.

Respondent sets forth in his complaint that appellant did "cause, procure, instigate and initiate the issuance of an Order or warrant of arrest against said Plaintiff charging him with the criminal offense of 'shoplifting' and/or 'larceny,' * * *." In order to sustain an action for malicious prosecution, one must first be charged with the commission of a crime and exonerated, *Segusky v. Williams,* 89 S. C. 414, 71 S. E. 971, 36 L. R. A., N. S., 230; *Aiken*

*v. Lancaster Cotton Mills,* 85 S. C. 180, 67 S. E. 166; *Whaley v. Lawton,* 57 S. C. 256, 35 S. E. 558; *Frierson v. Hewitt,* 2 Hill 499; *Keels v. City of Sumter,* 95 S. C. 203 78 S. E. 893; see also, Annotations, 36 A. L. R. (2d) 786.

While the word shoplifting does not appear in the Ordinances of Greenville, Webster's definition of shoplifter is: "One who steals from a shop goods exposed for sale"; and shoplifting as: "Act or practice of a shoplifter." Respondent contends that while the word shoplifting does not appear in the City Ordinances, the question was raised at the time of trial and that inasmuch as shoplifting involves the crime of larceny, respondent was tried under the aforementioned section of the Code which makes larceny a crime; and this is substantiated by the testimony of the Assistant City Attorney and the officer who signed the warrant.

The Municipal Court of Greenville, not being a Court of record, does not require technical precision in its preparation of warrants so long as they set forth plainly and substantially the crime charged. The word shoplifting inserted in the warrant could have left no doubt in respondent's or any one else's mind that he was "tried for taking a jar of coffee from the Dixie Home Store without paying for same," under Section 24-58, heretofore referred to. *McCall v. Alexander,* 81 S. C. 131, 61 S. E. 1106; *Duffie v. Edwards,* 185 S. C. 91, 193 S. E. 211. Certainly appellant's manager so understood at the time as he lent his efforts towards bringing about a conviction as will be referred to hereafter.

Appellant next contends that the trial Court erred in submitting the issue of probable cause to the jury.

While actions for malicious prosecution may be maintained in the courts, they have never been regarded with favor and are not encouraged as it is in the interest of good order that criminals be brought to justice; and it is generally held that the prosecutor is free from damage if there be probable cause for the accusation made, the burden being upon the plaintiff to show the absence of probable cause as a part

of the cause of action, *Fulmer v. Harmon,* 3 Strob. 576; *Hogg v. Pinckney,* 16 S. C. 387, see also, 6 South Carolina Law Quarterly 375-376.

By probable cause is meant the extent of such facts and circumstances as would excite the belief in a reasonable mind acting on the facts within the knowledge of the prosecutor that the person charged was guilty of a crime for which he has been charged, and only those facts and circumstances which were or should have been known to the prosecutor at the time he instituted the prosecution should be considered. *Brown v. Bailey,* 215 S. C. 175, 54 S. E. (2d) 769; *China v. Seaboard Air Line Ry.,* 107 S. C. 179, 92 S. E. 335.

"Similarly, it is essentially a matter for the jury, under proper instructions of the court, to pass on the sufficiency of the facts and circumstances relied on by the plaintiff to show lack of probable cause for the prosecution of the criminal action. Speaking to this very point, Mr. Justice McIver said: '* * * We think the true rule is, that after the jury have been instructed as to what constitutes probable cause, as matter of law, it is for them to say, from a review of all the facts and circumstances proved to have been present to the mind of the prosecutor at the time he commenced the prose-cution, or to the plaintiff at the time he commenced his civil action, whether there was or was not probable cause for such proceeding. This rule is, as we have seen, not without the support of authority, is easy of application, and is in analogy with the rule in cases of negligence, which like probable cause presents a mixed question of law and fact.' *Caldwell v. Bennett,* 22 S. C. 1." *Jennings v. Clearwater Mfg. Co.,* 171 S. C. 498, 172 S. E. 870, 872.

"Both in the lower court and in this court the defendants have urged that the plaintiff failed to meet the burden of proof imposed on him to prove the elements of (1) malice, (2) want of probable cause, and (3) the termination of the prosecution favorable to him, upon which his right of re-covery rested.

"In the consideration of actions seeking to recover damages for malicious prosecutions, it is to be remembered that, while individuals are to be protected against rash and baseless prosecutions, the public interests demand that courts shall not frown upon honest efforts made in attempts to bring the guilty to justice, and the juries, who try actions for malicious prosecutions, should ever keep these principles in mind. In every case of this character there necessarily arises a duty, sometimes a most difficult one, which either a jury or the court has to perform; namely, to make an application of the mentioned rule to the facts proven in the case.

"Under the practice in this state, neither this court nor a trial court may rightly assume the province of a jury in passing on the proof, for our Constitution mandatorily prescribes that a trial judge 'shall not charge juries in respect to matters of fact, but shall declare the law.' Section 26, Article 5." *Jennings v. Clearwater Mfg. Co., supra.*

In the instant case, respondent, who is described as a "timid individual" of seventy years of age, his wife and sister of similar age, were known to the store manager as regular customers and recognized as such by him, all three having traded at the store since it opened on "practically every Saturday and often during the week." The manager had cashed the sister's checks and talked with her, in respondent's presence, on previous occasions. Although they were customers of long standing, he had never had any previous difficulty with any of them. The manager saw respondent when he picked up the jar of coffee, after having inspected a number of others, and saw him walk about the store with the jar unconcealed in his hand until he had made a complete circuit of the store with no attempt to conceal it and saw him place it in his coat pocket when it became evident that he must use both hands in securing and carrying the twelve sixteen-ounce cans of dog food in a cardboard box. He saw him declare and pay for the dog food without producing the coffee, followed him from the store where he and the assistant manager accosted him and made inquiry as

to the coffee. Respondent felt his pocket and readily stated that he had "unthoughtfully taken it" and would like to pay for it. The manager refused payment therefor and ordered him back through the store into the stockroom. Respondent very obediently did as told without protest except as to declaring his innocence of any wrongful intention and again offered to pay. When the sister inquired of the manager as to what was taking place, he refused to explain and "seemed to be so mad he didn't know what to do." And he simply referred the elderly sister to a policeman for an explanation. Appellant's manager testified that upon being proffered payment for the coffee:

"A. I told him I couldn't accept his money because there was so much of this taking place I would treat him like I did the rest of them in the same position. I would call the law and turn it over to them.

"Q. In other words, treat this customer that has been coming to you for years just like you would a professional shoplifter?

"Mr. Arnold: I object.

"The Court: I think the question is proper.

"Mr. Morrah: You treated him like everybody else in there that took merchandise?

"A. Yes."

Respondent having been described as a timid individual, the following quoted testimony is quite revealing in this respect:

"Q. After he stopped you, did you walk on off? A. No, sir.

"Q. Why didn't you? A. Because he told me to 'hold on.'

"Q. Did you 'hold on'? A. Yes, sir.

"Q. Now, when you were back in the stockroom with the two employees, did you walk on out of there? A. No, sir.

"Q. Why didn't you? A. Because the manager told me to stay there until he come back."

It is well established that in an action for damages for malicious prosecution, malice may be inferred for want of probable cause, *Brown v. Bailey, supra;*

*Clemmons v. Nicholson,* 180 S. C. 54, 185 S. E. 34; *Bushardt v. United Investment Co.,* 121 S. C. 324, 113 S. E. 637, 35 A. L. R. 637; *Hogg v. Pinckney, supra; Stoddard v. Roland,* 31 S. C. 342, 9 S. E. 1027; *Baker v. Hornick,* 57 S. C. 213, 35 S. E. 524; *Graham v. Bell,* 1 Nott. & McC. 278; *China v. Seaboard Air Line Ry., supra; Jennings v. Clearwater Mfg. Co., supra.* And the implication of malice may be rebutted by circumstances, *Campbell v. O'Bryan,* 9 Rich. Law 204; *Smith v. Hughes,* 104 S. C. 149, 88 S. E. 369; *Baker v. Hornick, supra.* Any testimony of the circumstances offered to rebut the inference of malice, is not conclusive of the good faith of the prosecutor but merely circumstances for the consideration and interpretation of the jury. *China v. Seaboard Air Line Ry., supra; Jennings v. Clearwater Mfg. Co., supra.*

Under the circumstances, it was for the jury to say whether there was or was not probable cause for such proceeding; and it is equally true that the circumstances relied upon to rebut the implication of malice was an issue of fact to be submitted to the jury for its determination.

There is no merit in appellant's contention that it did not institute and maintain the prosecution of plaintiff. Appellant's manager confined respondent to his stockroom until the police officers arrived in response to his call for the purpose of arresting respondent, whereupon he pointed respondent out and stated he wanted him "carried in"; that it was his intention to treat respondent the same as a "professional shoplifter." He restrained respondent, procured, instigated and set the proceedings in motion. The unlawful arrest of respondent was the proximate result of its manager's instigation and conduct and it is liable therefor even though he did not make or sign the affidavit or warrant, *Wingate v. Postal Tel. & Cable Co.,* 204 S. C. 520, 30 S. E. (2d) 307; see also, 54 C. J. S., Malicious Prosecution, §§ 13-14, p. 966.

Appellant also contends error on the part of the Court in calling the witness Walker on its own motion and permitting him along with witness Lawless to testify as to what transpired at the trial of respondent in Municipal Court. Witness Walker was Assistant City Attorney and conducted the prosecution, and witness Lawless was the officer who signed the warrant. These witnesses were called for the purpose of ascertaining what transpired in Municipal Court, it not being a court of record; and each testified as to his own knowledge. The Court may of its own motion call a witness and examine same even out of order. It is a matter within the discretion of the trial Judge, and we see no merit in appellant's contention that the circumstances of the instant case are so unusual as to take it out of the rule.

Appellant's contention that the Court erred in charging respondent's third request in that it was a charge upon the facts, stating: "It is difficult to conceive of any other motive but a malicious one for bringing the prosecution," cannot be sustained. This statement is taken out of context by appellant. When the charge is read as a whole, it will be seen that these words were prefaced with the words "Without probable cause" and the jury fully charged that the question of malice or no malice was one for its determination with the burden of proof being upon respondent. The portion of the charge referred to by appellant when considered as a whole is in accord with *Baker v. Hornick, supra; Jennings v. Clearwater Mfg. Co., supra;* and this question must be resolved against appellant's contention.

Appellant next contends the Court erred in modifying its request number eight. The request was:

"* * * I charge you that if a person takes an article of merchandise from its place on the counter of a store and places it in his pocket so that it is concealed and leaves the premises without paying for it, he is prima facie presumed to have so concealed such article with the intention of converting it to his own use without paying the purchase price therefor."

The trial Judge, after charging the foregoing, added:

"* * * In conjunction therewith, I would instruct you this, Gentlemen, that this presumption, however, is a rebuttable presumption. The law simply says to him, 'you are the thief unless you can give a reasonable explanation for your possession.' If he gives a reasonable explanation, he is exonerated. If he does not give a reasonable explanation, the law still holds him to be the thief. It is for the jury to say from all of the facts and circumstances in the case as to whether this presumption has been rebutted."

The requested portion of the charge is in conformity with Section 16-359.1, *et seq.*, of the 1956 Cumulative Supplement, Code of Laws of South Carolina 1952, but this Act was passed subsequent to the delicts complained of in instant case and has no application hereto. The charge as given is in conformity with *China v. Seaboard Air Line Ry., supra;* see also, 54 C. J. S., Malicious Prosecution, §§ 26, 27, pp. 982 and 986.

The question of whether or not the verdict was excessive was fully argued before the trial Judge, who, in denying same, stated:

"I have carefully reviewed and considered each of the grounds advanced in behalf of the above motions and it is my considered judgment that they should be overruled and that the verdict as rendered by the jury in this case should stand."

There is testimony that respondent is a lifelong resident of the community with an unquestioned reputation. Since his arrest and imprisonment, he has not slept "hardly sound since" and has suffered an impairment in health.

While the verdict was a substantial one, its amount is not in our opinion so grossly excessive as to indicate that the jury was moved by passion, prejudice, bias, caprice or other improper considerations not founded on the evidence.

We are of the opinion that all exceptions should be dismissed; and it is so ordered.

Affirmed.

Stukes, C. J. and Oxner, Legge and Moss, JJ., concur.