Martha von BULOW, by her next friends Alexander AUERSPERG and Annie Laurie Auersperg Kneissl, Plaintiff,

v.

Claus von BULOW, Defendant.

Claus von BULOW, Plaintiff,

v.

Alexander AUERSPERG, Defendant.

No. 86 Civ. 7558 (JMW).

United States District Court, S.D. New York.

April 10, 1987.

David M. Simon, Michael F. Armstrong, Frederic W. Parnon, Carol Quackenbos, Barrett, Smith, Schapiro, Simon & Armstrong, New York City, for plaintiff.

Harold R. Tyler, Jr., Michael B. Mukasey, Patterson, Belknap, Webb & Tyler, New York City, for defendant.

## OPINION

WALKER, District Judge:

### I. INTRODUCTION

On October 2, 1986, Plaintiff Claus von Bulow ("von Bulow") filed the instant action against Defendant Alexander Auersperg ("Auersperg"). Plaintiff's complaint, as amended on October 3, 1986, alleges causes of action sounding in malicious prosecution and fraud.

Defendant moves to dismiss plaintiff's claims, and to strike portions of plaintiff's complaint from the public record. Plaintiff cross-moves to amend his complaint by adding a cause of action arising under the federal Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").[1]

---

1. Von Bulow also has moved for leave to bring the instant action as a third-party complaint in the 1985 civil action, instituted by Auersperg, which names von Bulow as the sole defendant.

*See* Fed.R.Civ.P. 14(a). However, this Court's decision that von Bulow's instant complaint does not state a cognizable cause of action pre-

Defendant's motion to dismiss plaintiff's state law claims is granted. Plaintiff's motion to amend his complaint is denied. Defendant's motion to strike portions of the complaint is denied.

## II. STATEMENT OF FACTS

The instant complaint is part of a continuing court battle which began when Martha von Bulow lapsed into a coma on December 21, 1980. Martha von Bulow remains in a coma today, more than six years later, and doctors agree that this coma is almost certainly irreversible. The cause of Martha von Bulow's coma has not been determined with certainty, although some medical experts have contended that the injection of a drug overdose, possibly including the medications insulin, amobarbital, and/or valium, resulted in her comatose condition.

On July 6, 1981, a Newport County, Rhode Island grand jury handed down an indictment charging Claus von Bulow ("von Bulow"), Martha von Bulow's husband and plaintiff in the instant action, with two counts of assault with intent to murder his wife. At von Bulow's first criminal trial, which commenced February 2, 1982, the prosecution argued that von Bulow had attempted to kill his wife by injecting her with a dose of insulin, which caused her current comatose state. On March 16, 1982, after a six-week trial and six days of deliberations, the jury found von Bulow guilty on both counts.

The Rhode Island Supreme Court subsequently vacated von Bulow's conviction and remanded the case for a new trial. *State v. von Bulow*, 475 A.2d 995 (R.I.1984). In an opinion dated April 27, 1984, the Rhode Island Supreme Court held that the trial court should have ordered the prosecution to disclose various documents to von Bulow. *Id.* at 1011-12. The State Supreme Court also held that one of the trial judge's

evidentiary rulings was in error, requiring reversal of von Bulow's conviction and a new trial. *Id.* at 1018-20. The trial judge had allowed the prosecution to introduce evidence obtained from police laboratory tests, conducted without a warrant, which showed that a black bag allegedly found in von Bulow's closet contained a number of drugs, including amobarbital, valium, and morphine. *Id.* at 1014 n. 9.

On April 25, 1985, von Bulow's second Rhode Island criminal trial began. On June 10, 1985, the jury returned a verdict of not guilty.

On July 19, 1985, Martha von Bulow's children by a previous marriage, Alexander Auersperg ("Auersperg") and Annie Laurie Auersperg Kneissl ("Kneissl") filed a civil action in this Court against Claus von Bulow ("the 1985 civil action"). Auersperg and Kneissel brought this action as next friends on behalf of Martha von Bulow. The next friends alleged that Claus von Bulow surreptitiously injected his wife Martha with insulin and other drugs, placing her in a permanent coma.

The next friends' complaint alleged claims sounding in common law tort, common law fraud, and RICO. In a May 5, 1986 opinion, this Court denied von Bulow's motion to dismiss the next friends' action. *Von Bulow v. Von Bulow*, 634 F.Supp. 1284 (S.D.N.Y.1986).[2] The parties to the next friends' suit currently are engaged in the process of discovery, which has necessitated several rulings from this Court. *See Von Bulow v. Von Bulow*, 114 F.R.D. 71 (S.D.N.Y.1987); *Von Bulow v. Von Bulow*, 652 F.Supp. 823 (S.D.N.Y.1986), *aff'd*, 811 F.2d 136 (2d Cir.1987).

In May 1986, Attorney Alan Dershowitz, who argued von Bulow's successful appeal following the first Rhode Island trial and who served as a consultant during von Bulow's second criminal trial, published a book entitled *Reversal of Fortune: Inside*

cludes consideration of his motion for leave to file a third-party complaint.

**2.** In this opinion, the Court granted von Bulow's motion to dismiss a claim, brought by Auersperg and Kneissl as individuals, under N.Y. Mental Hyg.Law § 78.01 (McKinney 1987).

*Von Bulow v. Von Bulow*, 634 F.Supp. 1284, 1298 (S.D.N.Y.1986). However, the Court otherwise denied various von Bulow motions to dismiss all claims raised by Auersperg and Kneissl as next friends of Martha von Bulow.

*the von Bulow Case.* The book makes out the case for von Bulow's innocence, which Dershowitz came to accept during his work as a defense attorney for von Bulow. One chapter, titled *Suitable for Framing,* speculates that Auersperg and Kneissl, among others, may have attempted to "frame" von Bulow for murder, planting drugs and/or other evidence among von Bulow's possessions after Martha von Bulow had lapsed into her irreversible coma. *Reversal of Fortune, supra,* at 247–52. As Dershowitz writes:

> Shortly after I entered the case I began to suspect that evidence might have been tampered with in an effort to enhance the likelihood of conviction. The more I learned about the case, the more my suspicions deepened that we might be dealing with a frame-up of an unusual kind.

*Id.* at 247.

In September 1986, the firm of Schulte, Roth & Zabel withdrew as defense counsel for von Bulow in the 1985 civil action filed by Auersperg. At this time, von Bulow retained the firm of Patterson, Belknap, Webb & Tyler, which on October 2, 1986 filed von Bulow's instant complaint against Auersperg and followed with an amended complaint on October 3, 1986.

Plaintiff von Bulow's complaint alleges that Defendant Auersperg "perpetrated a fraud of which von Bulow was the intended victim whereby Auersperg caused von Bulow to be accused of attempting to murder von Bulow's wife, Auersperg's mother, and criminally prosecuted therefor." As part of this "fraud," the complaint alleges that Auersperg locked a black bag containing various drugs and hypodermic needles inside a metal box in von Bulow's closet and "then arranged for the 'discovery' of this 'evidence.'"

The complaint further alleges that Auersperg committed perjury by testifying that he first " 'discovered' the black bag and its contents ... in von Bulow's closet...." The complaint charges that Auersperg induced Maria Schrallhammer, Martha von Bulow's former maid, to testify falsely against Claus von Bulow. After

the Rhode Island Supreme Court reversed von Bulow's conviction, according to the complaint, "Auersperg's fraudulent scheme continued at the new trial with the introduction of fabricated evidence and false testimony...."

In the concluding paragraphs, the complaint claims that Auersperg influenced his "elderly grandmother, Annie Laurie Aitken, Martha von Bulow's mother, against his half-sister, Cosima von Bulow, and led her to cut Cosima out of her will, depriving Cosima of an inheritance exceeding $30 million...." Finally, the complaint describes Auersperg's 1985 civil action as "a further part of the continuing fraud."

## III. DISCUSSION

Although the amended complaint is denominated an action sounding in fraud, virtually all of it is devoted to allegations that, with malice and without probable cause, Auersperg instituted the ultimately unsuccessful criminal prosecution in Rhode Island and, failing in that forum, maliciously instituted the 1985 civil action against von Bulow. This Court's conclusion that von Bulow's complaint pleads a cause of action in malicious prosecution, as opposed to fraud, is discussed in detail below. *See* text at pp. 1139–1142 *infra.*

However, in this opinion, the Court must decide whether the amended complaint pleads malicious prosecution or fraud only if a von Bulow malicious prosecution claim is barred by the strict procedural requirements governing this cause of action. The Court finds that these procedural requirements do in fact bar a von Bulow malicious prosecution action.

## A. DEFENDANT'S MOTION TO DISMISS.

### 1. *Plaintiff's Malicious Prosecution Claims.*

#### a. *Malicious Prosecution Claims Arising Out of Plaintiff's Rhode Island Criminal Proceedings.*

Paragraphs 12–32 of Plaintiff von Bulow's amended complaint allege that Defendant Auersperg was involved in various

acts of malicious prosecution during von Bulow's Rhode Island criminal proceedings. These proceedings concluded on June 10, 1985, when the jury hearing von Bulow's second criminal trial returned a not guilty verdict. Auersperg moves to dismiss von Bulow's malicious prosecution claims relating to the Rhode Island proceedings as barred by New York's statute of limitations.

Under New York law,[3] a malicious prosecution action must be brought within one year from the date on which the action first accrues. N.Y.Civ.Prac.L. & R. § 215(3) (McKinney 1972). A malicious prosecution action first accrues when the plaintiff receives a favorable final determination in the prior legal proceeding that forms the basis of the action. *Martin v. City of New York*, 627 F.Supp. 892, 900 (E.D.N.Y.1985); *Pico Products, Inc. v. Eagle Comtronics, Inc.*, 96 A.D.2d 736, 736, 465 N.Y.S.2d 628, 629 (4th Dep't 1983), *appeal dismissed*, 60 N.Y.2d 559, 471 N.Y.S.2d 1027, 459 N.E.2d 195 (1983); *Dailey v. Smiley*, 65 A.D.2d 915, 915, 410 N.Y.S.2d 468, 469 (4th Dep't 1978).

In the instant case, plaintiff's malicious prosecution action first accrued on June 10, 1985, when the Rhode Island criminal proceedings concluded with a not guilty verdict at his second trial. Therefore, a malicious prosecution action based on those proceedings was required to have been filed no later than June 10, 1986. Plaintiff failed to file such an action within the one-year limitation period and provides no argument for tolling the statute of limitations until October 2, 1986, when he first filed his instant complaint. *Compare Wheeler v. State*, 104 A.D.2d 496, 498, 479 N.Y.S.2d 244, 246 (2d Dep't 1984) (plaintiff's "manic-depressive illness" raised arguments for tolling the malicious prosecution statute of limitations).

█ In arguing that the one-year statute of limitations does not bar his malicious prosecution claims, plaintiff relies on the "relation-back doctrine." This doctrine, codified in the New York Civil Rules, provides:

A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

N.Y.Civ.Prac. L. & R. § 203(e) (McKinney 1972). Von Bulow could have raised the claims forming the basis of his instant action for malicious prosecution in his answer to Auersperg's 1985 civil action. He filed this answer on May 30, 1986, within one year of his Rhode Island state court victory.

However, Section 203(e) allows a plaintiff to rely on his original pleadings for statute of limitations purposes only where those original documents "give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." There is nothing in von Bulow's answer to the 1985 civil action that affords such notice. This six-page answer included only general denials of various plaintiff allegations and six affirmative defenses. The answer makes no mention of any affirmative claim by von Bulow against Auersperg, much less a claim for malicious prosecution. Such an answer does not provide adequate notice of pending claims, allowing a party to invoke the relation-back doctrine. *See Bernstein v. Spatola*, 122 A.D.2d 97, 100, 504 N.Y.S.2d 686, 689 (2d Dep't 1986); *New York Telephone Co. v. County Asphalt, Inc.*, 86 Misc.2d 958, 960, 382 N.Y.S.2d 211, 212 (Sup.Ct. Ulster Co. 1976).

Von Bulow argues that, notwithstanding the lack of notice provided by his answer, Auersperg received actual notice of von Bulow's malicious prosecution claims from facts and occurrences that arose during Auersperg's prosecution of the 1985 civil

---

**3.** Federal courts applying New York state law should also apply that state's statute of limitations provisions. *Stafford v. International Harvester Co.*, 668 F.2d 142, 147 (2d Cir.1981); *Bank of Boston International v. Arguello Tefel*, 626 F.Supp. 314, 315 (E.D.N.Y.1986) (mem.); *In re Agent Orange Product Liability Litigation*, 597 F.Supp. 740, 800 (E.D.N.Y.1984).

action, and before the expiration of the one-year limitation period. Von Bulow has failed to advance any facts to demonstrate that Auersperg learned of an impending suit before he was served with the instant complaint on October 2, 1986. But even if Auersperg had known that von Bulow would bring a suit alleging malicious prosecution, "mere notice alone, independent of the original pleadings, is inadequate; the pleadings themselves must give the requisite notice." *Shapiro v. Schoninger*, 122 A.D.2d 38, 40, 504 N.Y.S.2d 199, 201 (2d Dep't 1986); *accord Motz v. Cuevas*, 511 N.Y.S.2d 662, 663 (2d Dep't 1987).

Accordingly, to the extent that it alleges malicious prosecution based on the Rhode Island criminal proceedings, plaintiff's October 2, 1986 action, filed more than one year after his June 10, 1985 acquittal, is dismissed for failure to comply with New York's one-year statute of limitations.

### b. *Malicious Prosecution Claims Arising Out of Defendant's Federal Civil Action.*

Paragraph 36 of Plaintiff von Bulow's amended complaint alleges a malicious prosecution action based on Defendant Auersperg's 1985 civil action, in which discovery currently is proceeding. Auersperg moves to dismiss this claim, arguing that von Bulow may not bring a malicious prosecution claim until he has received a favorable and final determination in the 1985 civil action.

It is the law in New York that a plaintiff may not maintain a malicious prosecution action until he has received a favorable resolution of the prior action that forms the basis of the malicious prosecution claim. *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, 497 F.Supp. 947,

960 (S.D.N.Y.1980); *Curiano v. Suozzi*, 63 N.Y.2d 113, 118, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324, 1327 (1984); *Lewis v. Village of Deposit*, 40 A.D.2d 730, 730, 336 N.Y. S.2d 672, 673–74 (3d Dep't 1972), *aff'd*, 33 N.Y.2d 532, 347 N.Y.S.2d 434, 301 N.E.2d 422 (1973). The requirement that a malicious prosecution action must await a favorable resolution of the prior action rests on sound public policy. Otherwise a defendant, merely by being sued, could retaliate in every case with a malicious prosecution action. Such retaliatory suits would constitute "a waste of judicial resources.... [and] would create a situation where litigation could conceivably continue *ad infinitum* with each party claiming that the opponent's previous action was malicious and meritless." *Curiano v. Suozzi, supra*, 63 N.Y.2d at 119, 480 N.Y.S.2d at 469–70, 469 N.E.2d at 1328. Discouraging such retaliatory lawsuits also is consistent with "the strong public policy of open access to the courts for all parties without fear of reprisal in the form of a retaliatory lawsuit." *Id.*

In the instant case, von Bulow has yet to receive a favorable resolution of Auersperg's 1985 civil action. Even if this should occur, he must make a number of other showings in order to successfully bring a malicious prosecution action against defendant.[4] However, to decide the instant motion, this Court need only observe that plaintiff's malicious prosecution action based on the 1985 civil action is premature. On this basis, defendant's motion to dismiss is granted.

### 2. *Plaintiff's Fraud Claims.*

■ Plaintiff von Bulow argues that since he has alleged fraud, distinct from

---

4. Among the elements necessary to establish a cause of action for malicious prosecution, von Bulow must show that Auersperg lacked probable cause to establish the 1985 civil suit. Probable cause "[f]or the purposes of malicious prosecution ... has been defined as 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Burroughs v. New York City Transit Authority*, 112 A.D.2d 186, 188, 490 N.Y.S.2d 861, 863 (2d Dep't 1985)

(quoting *Burr v. Smith*, 181 N.Y. 1, 5, 73 N.E. 495, 496 (1905)). Since Auersperg's civil action has survived a motion to dismiss, *Von Bulow v. Von Bulow*, 634 F.Supp. 1284 (S.D.N.Y.1986), and was based, at least in part, upon evidence which resulted in the conviction of von Bulow by one jury, von Bulow may face substantial difficulties in establishing that Auersperg lacked any "knowledge of facts, actual or apparent," which justified his bringing the 1985 civil action.

malicious prosecution, his complaint is not time-barred. Defendant Auersperg moves to dismiss the complaint, insofar as it alleges fraud. He asserts that plaintiff's fraud claim is merely a recharacterization of the malicious prosecution action, designed to circumvent the applicable one-year statute of limitations.

In New York, a plaintiff who brings a cause of action sounding in fraud may invoke an unusually liberal six-year statute of limitations. N.Y.Civ.Prac. L. & R. § 213(8) (McKinney 1987). Since this is so, where the defendant raises the statute of limitations as a defense, a long line of cases, beginning with the New York Court of Appeals decision in *Brick v. Cohn-Hall-Marx Co.*, 276 N.Y. 259, 11 N.E.2d 902 (1937), mandates that courts carefully review the underlying basis of any fraud claim to ensure that it truly is one for fraud.

"When applying a statute of limitations, courts look at the essence of the stated claim and not the label by which plaintiff chooses to identify it." *Dolmetta v. Uintah National Corp.*, 712 F.2d 15, 19 (2d Cir.1983); *accord Brick v. Cohn-Hall-Marx Co., supra*, 276 N.Y. at 264, 11 N.E.2d at 904. Where "the essence of the stated claim" does not sound in fraud, courts will strike fraud claims "if the fraud allegation is only incidental to the claim asserted; otherwise fraud would be used as a means to litigate stale claims." *Powers Mercantile Corp. v. Feinberg*, 109 A.D.2d 117, 120, 490 N.Y.S.2d 190, 192 (1st Dep't 1985), *aff'd*, 67 N.Y.2d 981, 502 N.Y.S.2d 1001, 494 N.E.2d 106 (1986); *accord* 1 Weinstein, Korn & Miller, *New York Civil Practice* § 213.25, at 2–666 (1983). Thus, the Court of Appeals in *Brick* struck a fraud pleading in an action based on a breach of contract, since "[t]he only purpose which serves the plaintiffs in pleading the fraud is to avoid the Statute of Limitations...." *Brick v. Cohn-Hall-Marx Co., supra*, 276 N.Y. at 264, 11 N.E.2d at 904. *See also Miwon, U.S.A., Inc. v. Crawford*, 629 F.Supp. 153, 159 (S.D.N.Y.1985) (allegations amounting to "fraudulent nonperformance of the contract itself" governed by four-year contract statute of limitations,

rather than six-year fraud statute); *Stadtman v. Cambere*, 73 A.D.2d 501, 501–02, 422 N.Y.S.2d 102, 103–04 (1st Dep't 1979) (although complaint "seems to state a cause of action for fraud," plaintiff in fact alleged action sounding in conversion, and cour t thus would apply three-year conversion statute of limitations).

In assessing whether "the essence of the stated claim" sounds in malicious prosecution, this Court will consider the extent to which von Bulow's complaint pleads the elements of this intentional tort.

> To recover on a claim of malicious prosecution under New York law, a plaintiff must establish four elements: that (1) the defendant either commenced or continued a criminal [or civil] proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal [or civil] proceeding; and (4) that the criminal [or civil] proceeding was instituted in actual malice.

*Russo v. New York*, 672 F.2d 1014, 1018 (2d Cir.1982), *on reh'g*, 721 F.2d 410 (2d Cir.1983); *accord Brady v. Penn Central Transportation Co.*, 406 F.Supp. 1239, 1242 (S.D.N.Y.1975); *Rosemont Enterprises, Inc. v. Random House, Inc.*, 261 F.Supp. 691, 695 n. 11 (S.D.N.Y.1966). Plaintiff's allegations closely parallel these elements.

The complaint dwells extensively on Auersperg's initiation and prosecution of litigation against von Bulow, citing both the Rhode Island criminal proceedings and the civil action brought in this Court. In Paragraphs 17–19, it alleges, in substance, that Auersperg decided to frame von Bulow and that, when Auersperg was told that medical reports showed "very high levels" of insulin and "potentially fatal levels" of amobarbital in Martha von Bulow's blood, he fabricated evidence by inducing a maid to report finding hypodermic needles and insulin in a "black bag" in the von Bulow house and by planting needles, and other chemicals in a "small black bag" which was then "placed inside a small metal box on the floor of von Bulow's closet, which was then locked." According to

Paragraphs 20–28 of the complaint, Auersperg then arranged for the discovery of this evidence and initiated a chain of events leading to the selective presentation of evidence to the Rhode Island prosecutor pursuant to a "plan ... to have von Bulow convicted of attempted murder." In Paragraph 36, the complaint concludes that during July 1985, Auersperg and his sister "brought suit in this Court, as purported 'next friends' of Martha von Bulow, accusing von Bulow of having attempted to murder her, of having neglected to get her proper medical treatment and of engaging in acts of racketeering in violation of federal law."

The complaint alleges the second element necessary to state an action for malicious prosecution, favorable termination of the prior proceeding, by noting in Paragraph 32 that von Bulow was acquitted after his second criminal trial. The third element, lack of probable cause, is also alleged in the complaint. Indeed, as noted, the complaint alleges that Auersperg himself fabricated much of the evidence used against von Bulow. In addition to planting incriminating evidence, referred to above, the complaint, in Paragraph 29, alleges that Auersperg "testified falsely before the grand jury that indicted von Bulow."

The complaint's remaining allegations largely relate to the fourth element of the malicious prosecution tort: "that the criminal proceeding was instituted in actual malice." *Russo v. New York, supra,* at 1018. The complaint thus states, in Paragraph 12: "Auersperg decided ... to affix the blame for his mother's two comas on von Bulow and to arrange for von Bulow to be criminally prosecuted for the crimes of attempted murder." It alleges, in Paragraph 36 that Auersperg filed his civil action in this Court because he was "unable to accept the second jury verdict that left von Bulow a free man able to inherit under his wife's will...." In Paragraph 42, the complaint alleges: "At all times ..., Auersperg acted willfully and maliciously."

From the foregoing, the Court is led to the conclusion that the gravamen of von Bulow's action is one for malicious prosecu-tion. In so concluding, the Court notes that plaintiff seeks the relief typically requested in a malicious prosecution action.

> Generally, a plaintiff in a malicious prosecution action may recover damages ... including those for suffering arrest and imprisonment, injury to reputation and character, injury to health, well-being and feelings, and counsel fees and expenses in defending the criminal prosecution.

*Burlett v. County of Saratoga,* 111 A.D.2d 426, 427, 488 N.Y.S.2d 319, 320 (3d Dep't 1985); *accord Loeb v. Teitelbaum,* 77 A.D.2d 92, 104–05, 432 N.Y.S.2d 487, 496 (2d Dep't 1980), *amended,* 80 A.D.2d 838, 439 N.Y.S.2d 300 (2d Dep't 1981). Von Bulow's complaint here similarly seeks to recover damages for the injury to both his business and social reputation that allegedly has resulted from the Rhode Island prosecutions and the pending civil actions, as well as counsel fees and other expenses incurred in preparing his defense, both in Rhode Island and in this Court.

Von Bulow argues that he has stated an independent cause of action for fraud, since "[t]he allegations of ... [the] complaint amply allege a fraudulent scheme, in which the malicious prosecution was one but by no means the only element." To be sure, the words "fraud" and "fraudulent" are generously sprinkled throughout the complaint. However, a close reading of the complaint, after paring away such trimmings, reveals a dearth of allegations of Auersperg's activities not directly related to bringing and prosecuting legal actions. In fact, the complaint includes only one such allegation. In Paragraph 33 of the complaint, von Bulow alleges that "Auersperg continued with his plan and, with the assistance of a public relations firm, he and his sister [Kneissl] gave interviews to the print and television media designed to cast doubt on the [not guilty] verdict." However, the complaint fails to cite any specific interview where Auersperg misrepresented facts related to either criminal trial, or describe the content of any such misrepresentations. The Court thus cannot read this isolated and conclusory allegation as

sufficient to establish a cause of action sounding in fraud.[5]

Cases relied on by plaintiff to show that he has adequately pleaded a fraud action are inapposite. For example, in *Newin Corp. v. Hartford Accident and Indemnity Co.*, 37 N.Y.2d 211, 371 N.Y.S.2d 884, 333 N.E.2d 163 (1975), the New York Court of Appeals allowed the plaintiff to plead a fraud action based on the defendant's acts of suppressing testimony and suborning perjury which could not, of themselves, be a basis for claims under New York law. The *Newin* defendants did not raise the statute of limitations as a defense, and the court thus did not investigate whether plaintiff had attempted to recharacterize a malicious prosecution action to avoid the one-year statute of limitations. More significantly, the Court found that the distortion of testimony "in the bankruptcy … [was] extrinsic and part of a larger scheme which goes beyond the scope of the trustee's law suit. . . ." *Id.* at 218, 371 N.Y.S.2d at 890, 333 N.E.2d at 167. Conversely, plaintiff in the instant case has not alleged any fraud scheme extending beyond defendant's preparation and prosecution of legal actions against plaintiff.

Plaintiff also relies on a 1949 New York County Supreme Court decision, *Eisemann v. Fidelity & Deposit Co.*, 194 Misc. 664, 87 N.Y.S.2d 333 (Sup.Ct.N.Y.Co.1949). The *Eisemann* plaintiff, an insurance company, brought a fraud action to recover money that it had paid under an insurance policy. The basis of this fraud claim was not a court action, as in the instant case. Instead, the *Eisenmann* plaintiff alleged that the defendant had misrepresented the facts surrounding an employee theft, resulting in a wrongful recovery on the insurance policy. *Id.* at 666, 87 N.Y.S.2d at 335. Accordingly, the *Eisenmann* Court held that the action pleaded fraud, and applied the six-year statute of limitations.

To summarize, this Court reads the instant complaint as pleading a cause of action for malicious prosecution, not fraud. Plaintiff's "fraud" allegations involve nothing more than an attempt "to evade the strictures of limitations statutes simply by clever characterization of claims." *Korry v. International Telephone and Telegraph*, 444 F.Supp. 193, 195 (S.D.N.Y. 1978). Since settled New York case law prohibits Courts from recognizing a recharacterization of a malicious prosecution claim as a fraud claim, and since the malicious prosecution claim is time-barred, plaintiff's state law claims are dismissed.

## B. PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT AND ADD A RICO ACTION.

Von Bulow also moves to amend his complaint to plead a cause of action under RICO. This Court concludes that plaintiff has failed to demonstrate the presence of any predicate act of "Racketeering Activity" that could result in Defendant Auersperg's RICO liability, and thus denies defendant's motion to amend his complaint by adding a RICO claim.

" 'Racketeering activity' is defined in 18 U.S.C. § 1961(1) as any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions … and drug-related activity that is 'punishable' under federal law." *Malley-Duff & Associates v. Crown Life Insurance Co.*, 792 F.2d 341, 343 n. 1 (3d Cir. 1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 569, 93 L.Ed.2d 573 (1986). "Predicate acts are those federal and state crimes that RICO defines in detail as 'racketeering activity.' " *Youmans v. Simon*, 791 F.2d 341, 347 (5th Cir.1986). The Supreme Court has cautioned against a narrow interpretation of these predicate acts, since "the language of the statute and its legislative history indicate that Congress was well

---

5. In a complaint pleading fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In the instant complaint, any independent fraud claims are devoid of the specificity required in pleading fraud. *See, e.g., Decker v. Massey-Fer-*

guson, Ltd., 681 F.2d 111, 115 (2d Cir.1982); *Fustok v. Conticommodity Services, Inc.*, 618 F.Supp. 1082, 1085 (S.D.N.Y.1985); *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978).

aware that it was entering a new domain of federal involvement through the enactment of this measure." *United States v. Turkette,* 452 U.S. 576, 586, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981).

On the other hand, Congress did not intend to effect a wholesale preemption of state civil law in its enactment of RICO. *See generally* Note, *Civil RICO and "Garden Variety" Fraud—A Suggested Analysis,* 58 St. John's L.Rev. 93, 123–25 (1983). As the Third Circuit Court of Appeals has observed, the increasingly prevalent practice of recharacterizing state civil suits as federal RICO actions "has been the subject of increasing disquietude over the federalization of state common law." *Malley-Duff & Associates v. Crown Life Insurance Co.,* supra, 792 F.2d at 351. *Accord Shopping Mall Investors, N.V. v. E.G. Frances & Co.,* No. 84–1469, slip op. at 6 (S.D.N.Y. Jan. 30, 1987) [Available on WESTLAW, DCT database]. In seeking to prevent such a "federalization of state common law," courts have held that many types of civil claims cannot serve as a predicate for a RICO cause of action. *See, e.g., Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 655–56 (7th Cir.1984) (allegations of fraud resulting in plaintiff's bankruptcy did not state RICO predicate act); *Samuelson v. Union Carbide Corp.,* No. 85–5373, slip op. (S.D.N.Y. Jan. 29, 1986), [Available on WESTLAW, DCT database], *aff'd,* No. 86–7228, slip op. (2d Cir. July 31, 1986) (plaintiff's allegations that rules of promotional contest were deceptive failed to state a RICO predicate act).

■ The question of whether malicious prosecution may constitute a predicate act for the purposes of RICO liability is one of first impression, at least in this circuit. For the reasons set forth below, this Court concludes that malicious prosecution may not constitute a RICO predicate act.

The Eighth Circuit Court of Appeals, in *I.S. Joseph Co. v. J. Lauritzen A/S,* 751 F.2d 265 (8th Cir.1984), strongly suggested that malicious prosecution would not qualify as a RICO predicate offense. The *I.S. Joseph* Court found that the defendant's commencement of two allegedly groundless suits did not constitute "extortion," one of the acts specified in Section 1961 as a proper basis for RICO liability. The reasoning of the Eighth Circuit in *I.S. Joseph* is pertinent to the RICO claim which plaintiff seeks to bring in the instant case:

[I]f we were to hold that two threats to file a civil action ... constituted a 'pattern of racketeering activity,' citizens and foreigners alike might feel that their right of access to the courts of this country had been severely chilled. Judges and lawyers often complain that the courts are inundated with a flood of litigation, but the fact remains that litigation is as American as apple pie. If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary.

*Id.* at 267–68.

This Court's conclusion that malicious prosecution does not qualify as a predicate act under RICO receives further support from the recent decision in *Park South Associates v. Fischbein,* 626 F.Supp. 1108 (S.D.N.Y.1986), *aff'd,* 800 F.2d 1128 (2d Cir. 1986). In *Park South Associates,* the plaintiff real estate partnership filed a RICO action against a law firm that both had filed several suits, and allegedly had convinced the New York Corporation Counsel to institute an independent action against plaintiff. This Court dismissed plaintiff's RICO claim, in part for failure to plead a predicate act, writing: "Plaintiff's allegations may make out a state court action for abuse of process. But plaintiff has not pled [the RICO predicate act of] extortion." *Id.* at 1114. *See also American Nursing Care of Toledo v. Leisure,* 609 F.Supp. 419, 430 (N.D.Ohio 1984) (a "threat of litigation" is not a RICO predicate act).

In support of its holding that a malicious prosecution claim may not serve as the basis for a federal RICO cause of action, this Court notes that the tort of malicious prosecution has traditionally existed as a narrow exception to the principle of unhindered court access. As one author has stated:

Malicious prosecution is an action which runs counter to obvious policies of the law in favor of encouraging proceedings against those who are guilty, and letting finished litigation remain undisturbed and unchallenged. It has never been regarded with any favor by the courts, and it is hedged with restrictions which make it very difficult to maintain.

W. Prosser & W.P. Keeton, *Prosser & Keeton on Torts* § 119, at 876 (5th ed. 1984). *See also* Note, *Counterclaim for Malicious Prosecution in the Action Alleged to Be Malicious,* 58 Yale L.J. 490, 494 (1949).

In New York, the use of strict procedural requirements to limit malicious prosecution actions dates back to the Court of Appeals decision in *Burt v. Smith,* 181 N.Y. 1, 73 N.E. 495 (1905) and reflects the strong public policy favoring open access to the courts. In establishing that a plaintiff bringing a malicious prosecution action must plead both actual malice and a lack of probable cause, the Court rejected more liberal pleading requirements because "public policy requires that all persons should freely resort to the courts for redress of wrongs...." *Id.* at 5, 73 N.E. at 496; *accord Curiano v. Suozzi,* 63 N.Y.2d 113, 118–19, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324, 1328 (1984); *Jestic v. Long Island Savings Bank,* 81 A.D.2d 255, 259, 440 N.Y.S.2d 278, 279–81 (2d Dep't 1981).

Other state courts have consistently subscribed to this view. For example, the California Supreme Court has stated:

[M]alicious prosecution is a cause of action not favored by the law.... The ... risk and expense [of malicious prosecution liability] ... may deter poor plaintiffs from asserting bona fide claims.

*Babb v. Superior Court,* 3 Cal. 3d 841, 92 Cal.Rptr. 179, 182, 479 P.2d 379, 382 (1971). And in dismissing a malicious prosecution action, the New Jersey Supreme Court observed: "Malicious prosecution ... is not a favored cause of action because of the policy that people should not be inhibited in seeking redress in the courts." *Penwag Property Co. v. Landau,* 76 N.J. 595, 388 A.2d 1265, 1266 (1978).[6]

State legislatures also have sought to limit the availability of malicious prosecution actions by adopting relatively strict statutes of limitations. As discussed above, New York's statute bars any malicious prosecution action brought more than one year after that action first accrues. N.Y.Civ.Prac. L. & R. § 215(3) (McKinney 1972). Several other state legislatures have enacted statutes that place strict time limits on malicious prosecution actions.[7]

To recognize malicious prosecution as a RICO predicate act would severely undermine the settled state policy of discourag-

---

**6.** The Courts in at least 19 other states have adopted statements, similar to those found in the New York, California, and New Jersey opinions cited above, expressing the importance of limiting the availability of malicious prosecution actions. *See, e.g., Evans v. Alabama Professional Health Consultants, Inc.,* 474 So.2d 86, 88 (Ala.1985); *Bearup v. Bearup,* 122 Ariz. 509, 596 P.2d 35, 36 (Ct.App.2d Div.1979); *Clark v. Alloway,* 67 Idaho 32, 170 P.2d 425, 427 (1946); *Joiner v. Denton,* 82 Ill.2d 40, 44 Ill.Dec. 260, 411 N.E.2d 229, 231 (1980); *Allen v. Department of Health & Human Resources,* 456 So.2d 679, 682 (La.Ct.App. 5th Cir.1984); *Siegman v. Equitable Trust Co.,* 267 Md. 309, 297 A.2d 758, 762 (1972); *Hubbard v. Beatty & Hyde, Inc.,* 343 Mass. 258, 178 N.E.2d 485, 488 (1961); *Renda v. International Union, United Auto, Aircraft and Agriculture Implement Workers,* 366 Mich. 58, 114 N.W.2d 343, 350 (1962); *Foster v. Turner,* 319 So.2d 233, 235 (Miss.1975); *Zahorsky v. Griffin, Dissart, Taylor, Penner, Penner & Lay,* 690 S.W.2d 144, 151 (Mo.Ct.App.1985); *Reece v.*

*Flooring,* 634 P.2d 640, 643 (Mont.1981); *Woyczynski v. Wolf,* 11 Ohio App.3d 226, 464 N.E.2d 612, 614 (1983); *Young v. First State Bank,* 628 P.2d 707, 709 (Okla.1981); *Lampos v. Bazar, Inc.,* 270 Or. 256, 527 P.2d 376 (1974); *Elletson v. Dixie Home Stores,* 231 S.C. 565, 99 S.E.2d 384, 387 (1957); *Parker v. Dallas Hunting & Fishing Club,* 463 S.W.2d 496, 499 (Tex.Civ.App. 1971); *Chittenden Trust Co. v. Marshall,* 146 Vt. 543, 507 A.2d 965, 969 (1986); *Ayyildiz v. Kidd,* 220 Va. 1080, 266 S.E.2d 108, 110 (1980); *Nichols v. Severtsen,* 39 Wash.2d 836, 239 P.2d 349, 350 (1951).

**7.** *See, e.g.,* D.C.Code Ann. § 12–301(4) (1981) (malicious prosecution actions governed by one-year statute of limitations); Ohio Rev.Code Ann. § 2305.11 (Anderson 1981) (same); Tex.Rev. Stat.Ann. art. 5524 (Vernon 1958) (same). *See also* Ill.Ann.Stat. ch. 110, ¶ 13–202 (Smith-Hurd 1984) (malicious prosecution actions governed by two-year statute of limitations); N.J.Stat. Ann. § 2A:47A–2 (West Supp.1985) (same).

ing such actions. Permitting such RICO actions not only would provide malicious prosecution plaintiffs with unprecedented access to federal court, but also would encourage these plaintiffs to seek the treble damage remedy authorized by the federal statute. 18 U.S.C. § 1964(b).

In arguing that this Court should recognize malicious prosecution as a predicate act under RICO, plaintiff attempts to draw an analogy to the antitrust doctrine of liability for "repetitive, sham litigation." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 635 n. 6, 97 S.Ct. 2881, 2889 n. 6, 53 L.Ed.2d 1009 (1977). *See also Otter Tail Power Co. v. United States*, 410 U.S. 366, 380, 93 S.Ct. 1022, 1030, 35 L.Ed.2d 359 (1973); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Under this doctrine, a series of suits brought as a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor" may constitute an actionable antitrust conspiracy. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S.Ct. 523, 533, 5 L.Ed.2d 464 (1961); *Landmarks Holding Corp. v. Bermant*, 664 F.2d 891, 896 (2d Cir.1981).

At the outset, the Court notes that the doctrine authorizing antitrust liability based on "sham" litigation constitutes a narrow exception to the general principle that legitimate court action cannot give rise to antitrust liability. *See, e.g., Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484, 487 (8th Cir.1985); *Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir.1983); *Mid-Texas Communications v. American Telephone & Telegraph Co.*, 615 F.2d 1372, 1384 (5th Cir.1980). "Indeed, the right to petition the government is fundamental to our representative democracy, and the Supreme Court has repeatedly made clear that the antitrust laws were not intended to interfere with this basic freedom." *Associated Container Transportation Ltd. v. United States*, 705 F.2d 53, 58–59 (2d Cir.1983); *accord Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365

U.S. 127, 135–36, 81 S.Ct. 523, 528–29, 5 L.Ed.2d 464 (1961). In short, "[a]ppeal to government, including use of the judicial process by instigation or commencement of lawsuits, cannot alone be the basis of antitrust liability. Rather, it is the corruption of the administrative or judicial process that removes the shield of antitrust immunity...." *Wilmorite, Inc. v. Eagan Real Estate, Inc.*, 454 F.Supp. 1124, 1131 (N.D. N.Y.1977), *aff'd*, 578 F.2d 1372 (2d Cir.), *cert. denied*, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 655 (1978).

In concluding that a RICO claim may not be maintained in this case, the Court need not address the situation where allegedly unjustified suits form a part of some more extensive scheme of racketeering activity, such as extortion. The Court need only conclude that a complaint based on nothing more than a party's filing of unjustified suits cannot fulfill the requirement that a RICO plaintiff plead a predicate act. Similar reasoning was adopted by a federal district court in *Sellers v. General Motors Corp.*, 590 F.Supp. 502 (E.D.Pa.1984). While the *Sellers* Court dismissed a RICO claim where perjury alone was alleged as the predicate act, the Court stated, *in dicta*, that the result might be different had the perjury been an element of a larger conspiracy to defraud. *Id.* at 506–07.

As discussed above, the complaint in this case alleges merely a cause of action sounding in malicious prosecution. While plaintiff's motion papers allude to "a fraudulent scheme, in which the malicious prosecution was one but by no means the only element," a careful reading of the complaint reveals that this alleged "scheme" amounts to nothing more than a series of acts that, taken together, state a claim for malicious prosecution. To the extent that any independent fraud allegations may be gleaned from the complaint, they are far too general and conclusory to support a RICO action. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 21 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *The Limited, Inc. v. McCrory Corp.*, 645 F.Supp. 1038, 1047 (S.D.N.Y.1986); *Ainsfeld v. Cantor Fitz-*

*gerald & Co.*, 631 F.Supp. 1461, 1465 (S.D. N.Y.1986).

In sum, the Court concludes that malicious prosecution cannot serve as the predicate act for a RICO cause of action. Since plaintiff has alleged no other predicate act, the Court denies plaintiff's motion to amend his complaint by adding a RICO claim.

## C. DEFENDANT'S MOTION TO STRIKE THE COMPLAINT FROM THE PUBLIC RECORD.

The defendant has moved, pursuant to Fed.R.Civ.P. 12(f), to strike the complaint, or portions thereof, from the public record as containing "impertinent" or "scandalous" matter. This motion is denied.

 The Federal Rules provide: "Upon motion made by a party ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike portions of a complaint "are addressed to the discretion of the [district] court...." *Hoffman Motors Corp. v. Alfa Romeo*, 244 F.Supp. 70, 81 (S.D.N.Y.1965). However, motions to strike "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter." *Schramm v. Krischell*, 84 F.R.D. 294, 298 (D.Conn. 1979). "[T]he courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976); *Staats v. Ohio National Life Insurance Co.*, 620 F.Supp. 118, 120 (W.D. Penn.1985); *Staples v. Avis Rent-A-Car System, Inc.*, 537 F.Supp. 1215, 1220 (W.D. N.Y.1982); *FRA S.p.A. v. SURG–O–FLEX*, 415 F.Supp. 421, 427 (S.D.N.Y.1976).

 This Court will not strike von Bulow's pleadings in the instant case. Although the complaint describes Auersperg's motives in tones ranging from cynical to caustic, Auersperg previously leveled volatile accusations against von Bulow in the 1985 civil action, which alleges that von Bulow attempted to murder Martha von Bulow and fraudulently acquired her property. Given the tenor of Auersperg's complaint, he is "hardly in a position to complain when plaintiff responds in kind." *Lewis v. Shaffer Stores Co.*, 218 F.Supp. 238, 240 (S.D.N.Y.1963). Moreover, it cannot be said that the language of the complaint can have no possible bearing on the subject matter of the allegations. Finally, the court notes that the dismissal of all of plaintiff's claims greatly reduces any force the motion to strike would have carried, had this Court not dismissed the complaint on other grounds.

## IV. CONCLUSION

The Court grants defendant's motion to dismiss the complaint. Plaintiff's motion to amend his complaint to include a RICO claim is denied. Defendant's motion to strike certain allegations appearing in the complaint from the public record is denied.

SO ORDERED.