WOYCZYNSKI, APPELLANT, *v.* WOLF ET AL., APPELLEES.

(No. 46805—Decided December 19, 1983.)

*Mr. William Louis Tabac* and *Mr. Elliot Levine,* for appellant.

*Mr. James M. Gowan,* for appellees.

JACKSON, P.J. This is an appeal from a decision of the court of common pleas granting summary judgment to the defendants-appellees, Marshall Wolf and Donna Catliota, on the complaint of plaintiff-appellant, Wojbor Woyczynski, for malicious prosecution.

This lawsuit grew out of the divorce action between the parties filed by Mr. Woyczynski in February 1981. Attorneys Wolf and Catliota represented Alexandra Woyczynski and attorney William Louis Tabac represented Wojbor Woyczynski. On May 20, 1980, during the pendency of the divorce proceeding, Alexandra was treated at Kaiser Permanente Hospital by Dr. Maurice Soremekum for cervical bleeding. Dr. Soremekum was told by Mrs. Woyczynski that she had been raped by her husband. Mrs. Woyczynski subsequently swore out a complaint in the Shaker Heights Municipal Court against her husband. He was acquitted of the charge of domestic violence. On the basis of this incident, however, the domestic relations division of the court of common pleas barred appellant from the marital premises.

Wolf and Catliota withdrew from their representation of Mrs. Woyczynski[1] and were replaced by attorneys Avery Friedman and Pamela Bancsi. Subsequently, Mrs. Woyczynski discharged her attorneys and signed a separation agreement drafted by her husband's attorney, Tabac, who also drafted the journal entry dissolving the parties' marriage. After

[1] While the evidence does not disclose the reason, appellant contends that attorneys Wolf and Catliota withdrew from their representation of Mrs. Woyczynski because of conflict of interest.

the parties' divorce became final, appellant instituted this action for malicious prosecution against his former wife and her former attorneys.

Mrs. Woyczynski filed a counterclaim against her former husband for assault, and against Tabac and her former husband for fraud, on the ground that she was led to believe that the separation agreement would end all disputes between the parties.[2] Subsequently, the appellant and his former wife agreed to dismiss their respective claims against each other and Mrs. Woyczynski's claim against Tabac. The only claims remaining in the case were appellant's claims against appellees Wolf and Catliota on two counts of malicious prosecution: one being the criminal action in Shaker Heights Municipal Court, the other being the motion to bar appellant from the marital premises filed in the domestic relations division of the court of common pleas. The trial court entered summary judgment in favor of the appellees as to both malicious prosecution counts.

Suits for malicious prosecution are not favored by the courts because they act as a restraint upon the right to resort to the courts for lawful redress. See *Skarbinski* v. *Henry H. Krause Co.* (C.A. 6, 1967), 378 F. 2d 656 [41 O.O.2d 404]. In Ohio, the requirements are especially stringent. To make out a *prima facie* case of malicious prosecution it is necessary to prove (1) that the defendant was motivated by actual malice in instituting the civil or criminal action or proceeding; (2) that the defendant lacked probable cause to initiate proceedings; (3) that the plaintiff was arrested or the plaintiff's property was seized in connection with the proceeding; and (4) the proceeding was terminated in favor of the plaintiff. See *Rogers* v. *Barbera* (1960), 170 Ohio St.

241 [10 O.O.2d 248]; *Cincinnati Daily Tribune Co.* v. *Bruck* (1900), 61 Ohio St. 489; *Avco Delta Corp.* v. *Walker* (1969), 22 Ohio App. 2d 61 [51 O.O.2d 122].

Appellees contend that attorneys enjoy complete immunity from suit for malicious prosecution, so long as they are performing "professional activities as an attorney on behalf of, and with the knowedge of * * * [their] client." *W.D.G., Inc.* v. *Mut. Mfg. & Supply Co.* (Franklin App. 1976), 5 O.O. 3d 397, 399-400. Appellant contends that an attorney is liable for malicious prosecution in Ohio, under the authority of *Bd. of Edn.* v. *Marting* (Fayette C.P. 1962), 88 Ohio Law Abs. 475, 480, as follows:

"The defendants, Griffith and Malone, raise the additional question whether a malicious prosecution action can or cannot be maintained against an attorney at law based upon his capacity as such in a previous action. This Court concludes that an attorney has a responsibility to his client to advise his client as to the merits of his cause.

"This Court recognizes that 'to err is human' but an attorney, due to his background and education, is in much better position to minimize error. An attorney is in good position 'to know that the client is activated by malice and, also knows that there is no cause for the prosecution; the dictates of common honesty require that he also should be made accountable.' "

There have been two unreported decisions by this court of appeals on the question of attorney liability for malicious prosecution or malicious abuse of process. In *Nader* v. *McBride* (June 19, 1980), No. 39641, unreported, this court quoted from, but did not expressly adopt, the holding in *W.D.G., Inc.* v. *Mut. Mfg. & Supply Co., supra.* In *Berger* v. *Palay*

---

[2] Attorney Bancsi stated in her affidavit that she would have advised Mrs. Woyczynski not to sign the separation agreement because it provided for lower levels of alimony and support than she was entitled to, and because it did not contain a standard clause releasing all claims between the parties.

(Nov. 25, 1981), No. 42903, unreported, another panel of this court rejected the absolute immunity rule of *W.D.G., Inc.,* and held that attorneys may be held liable for malicious abuse of process where their actions are personally motivated by malice, and where they advise or act in concert with their clients to institute proceedings without probable cause.

To hold attorneys liable for malicious prosecution might have the effect of inhibiting zealous, but proper, advocacy on behalf of clients. Despite this policy consideration, it appears that the vast majority of courts which have considered the question have declined to confer an absolute immunity upon attorneys from liability for malicious prosecution. See Annotation, Liability of Attorney Acting for Client, for False Imprisonment or Malicious Prosecution of Third Party (1969), 27 A.L.R. 3d 1113. Most courts have held that an attorney acting in good faith upon the representations of a client cannot be held liable for malicious prosecution. *E.g., North Point Constr. Co.* v. *Sagner* (1945), 185 Md. 200, 44 A. 2d 441; *Maechtlen* v. *Clapp* (1926), 121 Kan. 777, 250 P. 303. Cf. *Petrey* v. *Simon* (1983), 4 Ohio St. 3d 154, 157-160 (Celebrezze, C.J., dissenting).

Certainly the courts must avoid imposing liability upon attorneys for conduct which the Canons of Ethics require attorneys to undertake. Canon 7 of the Code of Professional Responsibility states the essential function and ethical duty of a lawyer: "A Lawyer Should Represent a Client Zealously Within the Bounds of the Law." The relevant Disciplinary Rules forbid an attorney from advancing a claim or taking other action which the attorney "knows" to be unwarranted or which cannot be supported by a good-faith argument for an extension, modification or reversal of existing law. DR 7-102 and 7-106(C).[3]

In determining whether a client's representations and stated reasons for instituting suit are true, or are motivated by malice or some other purpose, the attorney must indulge in every reasonable doubt in favor of the client. This is the guidance provided by EC 7-6, which defines the attorney's role in evaluating the representations of a client. It states, in part:

"In many cases a lawyer may not be certain as to the state of mind of his client, and in those situations he should resolve reasonable doubts in favor of his client."

---

[3] DR 7-102(A) and 7-106(C) provide:
"In his representation of a client, a lawyer shall not:

"(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

"(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

"(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

"(4) Knowingly use perjured testimony or false evidence.

"(5) Knowingly make a false statement of law or fact.

"(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

"(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule." DR 7-102(A).

"In appearing in his professional capacity before a tribunal, a lawyer shall not:

"(1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.

"(2) Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person.

"(3) Assert his personal knowledge of the

A final and determinative factor to be considered in imposing liability upon attorneys for malicious prosecution is the existence of the attorney-client privilege. This privilege is established in R.C. 2317.02(A), which provides:

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client; but the attorney may testify by express consent of the client, or if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of such deceased client; and if the client voluntarily testifies, the attorney may be compelled to testify on the same subject."

This privilege cannot be waived by the attorney. The option to disclose confidential communications rests with the client, and may only be exercised by the client or the client's personal representative. *Taylor* v. *Sheldon* (1961), 172 Ohio St. 118 [15 O.O.2d 206].

In the case at bar, the client and her attorneys were originally named as joint defendants. Subsequently, the appellant dismissed his claim against the client, and proceeded solely against the client's attorneys on his claim of malicious prosecution. The attorneys deposed their client as on direct examination. By voluntarily testifying regarding her confidential communications with her attorneys, the attorney-client privilege was waived. The privilege is not presumed waived merely because a third party filed a claim alleging malicious prosecution, nor does this court find the privilege waived from the fact that the defendants denied the allegations of the complaint. The statute contains no provision for an automatic waiver based upon the pleadings.

Furthermore, waiver of the privilege will not be presumed from the fact that the client was called to testify as on cross-examination, because this is not considered to be "voluntary testimony" within the meaning of the statute. Cf. *Black* v. *Port, Inc.* (1963), 120 Ohio App. 369 [29 O.O.2d 238] (physician-patient privilege).

The burden rested upon the plaintiff-appellant to establish the elements of his cause of action against the attorneys. In view of the attorneys' ethical responsibility of zealous representation, it must be shown that the attorneys either acted maliciously or that they knew, by clear and convincing evidence, that their client was motivated solely by actual malice. It must also be shown that they did not have a good-faith basis for believing that the civil or criminal proceeding was warranted under existing law, or under a good-faith argument for extension, modification, or reversal of existing law. This is, essentially, the "probable cause" element as it applies to attorneys.

As in all other actions of malicious prosecution, the appellant bore the burden of proving that his person or property was seized in the course of the proceedings, and that the proceedings were terminated in his favor.

Finally, in view of the existence of the attorney-client privilege, the appellant, as a practical matter, was required to

---

facts in issue, except when testifying as a witness.

"(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

"(5) Fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving to opposing counsel timely notice of his intent not to comply.

"(6) Engage in undignified or discourteous conduct which is degrading to a tribunal.

"(7) Intentionally or habitually violate any established rule of procedure or of evidence." DR 7-106(C).

establish his case for malicious prosecution against his former wife's attorneys after having her expressly waive the privilege, and examining her on cross-examination, or through her voluntary testimony. Although Mrs. Woyczynski waived the attorney-client privilege by voluntarily testifying, her testimony on deposition was not favorable to appellant's cause.

The evidence before the court on the appellees' motion for summary judgment discloses an indisputable good-faith basis for the actions taken by the appellees. Their client's deposition, her hospital records, the testimony of her physician, and the Shaker Heights police and court records all establish that she informed her attorneys and many others that her husband had attacked her sexually, against her will, shortly after a minor gynecological surgical procedure. Though appellant disputed that the attack occurred, he could not establish what his wife told her attorneys. There was no genuine dispute of fact for trial, nor did it appear that appellant had any available means of proving that his wife's attorneys acted maliciously, in bad faith, and without probable cause in causing criminal and civil proceedings to be instituted against him.

Accordingly, the decision of the trial court granting summary judgment to the appellees is affirmed.

*Judgment affirmed.*

PRYATEL and ANN McMANAMON, JJ., concur.