COURTNEY, APPELLANT, *v.* RICE ET AL., APPELLEES.

134

(No. C-870478—Decided
March 30, 1988.)

*Lindhorst & Dreidame* and *Jay R. Langenbahn,* for appellant.

*Dinsmore & Shohl, Gary D. Bullock* and *Kathleen Fehr,* for appellees David Rice, Chris Wallace, Robert Lilley, Ron Sturgill and city of Blue Ash.

*Bloom & Greene Co., L.P.A., Michael D. Eagen* and *Nancy J. Gill,* for appellees Maurice Wesselmann and Hamilton County Communication Center.

*Per Curiam.* This cause came on to be heard upon the appeal from the Hamilton County Court of Common Pleas.

This case commenced with the filing of a complaint against the city of Blue Ash, the chief of its police force, three officers of that force, the Hamilton County Communication Center and its director seeking damages for, *inter alia,* false arrest, false imprisonment, malicious prosecution, defamation, infliction of emotional distress and failure to produce transcriptions of radio broadcasts pursuant to subpoena.

The appeal derives from the order of the court granting summary judgment in favor of all defendants-appellees.

The assignments of error raise identical questions. The first assignment asserts that the court erred in granting summary judgment in favor of the city of Blue Ash, the chief of police and his officers. The second alleges error in the granting of summary judgment in favor of the communication center and its director.

The factual situation upon which the court was required to rely to rule upon the motions for summary judgment pursuant to Civ. R. 56 is distilled as follows for purposes of our disposition of the assignment of error.

Late in the evening of January 27, 1982, the plaintiff-appellant, Sylvester Courtney, Jr., entered the parking lot of a restaurant in Blue Ash. He found the lot to be fully occupied and he parked his automobile immediately in front of a door to the rear of the restaurant, characterized as a "service door," adjacent to a receptacle for waste. Courtney entered the restaurant through its front door.

Prompted by complaints from employees of the restaurant who were experiencing difficulty in exiting through the service door to dump trash, the manager of the restaurant investigated. The manager believed Courtney's vehicle to be parked in a fire lane, and notified the Blue Ash Police Department of the problem. The manager then announced the make, model and license number of Courtney's automobile over the public-address system, but received no response.

Officer Rice, defendant-appellee, responded to the manager's complaint and summoned a private tow truck operator to the scene for the purpose of removing Courtney's car. Sgt. Wallace, defendant-appellee, arrived before the tow truck and he and Officer Rice entered the car but could discover nothing to identify its owner. Ultimately, the vehicle was towed away and secured in an impounding lot behind the Blue Ash Municipal Building.

At about 1:20 a.m., January 28, Courtney left the restaurant, discovered his car was missing and talked to two police officers in the vicinity.

Sgt. Wallace told Courtney his car had been impounded and that Officer Lilley, defendant-appellee, would transport Courtney to the Blue Ash Municipal Building which housed the police station. Shortly after Courtney was taken there, Officer Rice arrived and Courtney's correct name was included in the citation for parking in a fire lane.[1]

Apparently, Courtney paid a fee of some kind to Officer Rice, who provided Courtney with a "vehicle release" form bearing the signature of the driver of the tow truck. Officer Rice directed Courtney to the impounding lot, where Courtney found his automobile. One of the tires was flat and Courtney proceeded to change it. While he was so engaged, an unidentified Blue Ash police officer told Courtney that police procedure prohibited Courtney from removing the car from the lot until the towing charge was paid directly to the private operator. This admonition was repeated by Officer Rice.

Courtney offered payment of the service charge to Officer Rice, who refused it on the basis that police procedure did not permit him to accept it. Courtney apparently was advised that if he removed the car he would be arrested. Courtney completed the tire change, drove his car from the lot and, immediately thereafter, was arrested by Officer Rice for taking the vehicle. Courtney was handcuffed, and returned to the police station. Subsequently, Officer Rice signed a complaint which charged Courtney with a violation of R.C. 2913.02 (theft).[2] Additionally, Courtney was cited for parking in violation of an ordinance of the city of Blue Ash prohibiting parking in a fire lane.

Courtney appeared in the Mayor's Court of Blue Ash without legal counsel, offered no defense, was found guilty of the parking violation, and immediately took an appeal to the Hamilton County Municipal Court. Ultimately, a judge of that court found him guilty of the charge.

During this same time, Courtney was found guilty of the theft charge by a jury in the Hamilton County Municipal Court. He appealed both this conviction and that had upon the parking violation to this court. The judgments in both cases were reversed upon those appeals.

The basis of Courtney's complaint against the Hamilton County Communication Center and its director, Maurice Wesselmann, is that prior to his trial on the theft charge, Courtney issued a subpoena *duces tecum* to the center directing it to produce tapes of all radio transmissions between midnight, January 29, 1982, and midnight, January 30, 1982.

A representative of the center appeared at the time designated with the tapes. Apparently the tapes could not be played with the equipment available in the courtroom, and the witness left. Allegedly, the prosecutor in charge of the case against Courtney had directed the witness to depart. The case was continued.

A second subpoena *duces tecum*

---

[1] Papers found within the car when Sgt. Wallace and Officer Rice first entered it carried the name "James Cooper," and reference to records of the Ohio Bureau of Motor Vehicles showed its registration to be in a corporate name.

[2] The complaint, in part, is that Court-

ney, "with purpose to deprive * * * Ruwe Auto body thereof, did knowingly * * * exert control over one 1969 Chev Impala automobile #GES366, * * * without consent of the person authorized to give consent contrary to and in violation of Section 2913.02 of the Revised Code of Ohio, a * * * misdemeanor of the 1st degree."

was issued for March 8, 1982, the date to which the case had been continued, again demanding production of the tapes of broadcasts "between 2400 hours, January 29, 1982, and 2400 hours on January 30, 1982."

The same representative of the center appeared and advised the court that he was unable to produce the tapes because they had been "erased" during the normal course of business at the center.

The gist of Courtney's complaint against the center and Wesselmann is that they were negligent in not producing the tapes and that he was damaged in that the tapes might have contained evidence pertaining to the motive of the Blue Ash police officers in arresting him. The appellant argues that their sole motive was to seize his vehicle and inspect it to determine whether it "had any relationship" to an abduction which had been reported to the Blue Ash police.

In *Vesey* v. *Connally* (1960), 112 Ohio App. 225, 228, 16 O.O. 2d 146, 148, 175 N.E. 2d 876, 878, the Court of Appeals for Lucas County held, *inter alia,* that "a finding of guilty of a criminal offense by a court having jurisdiction to try and dispose of the case, even though later and finally reversed by a reviewing court, raises a conclusive presumption of probable cause and constitutes a complete defense in a later action for malicious prosecution brought by the defendant in the criminal case against the instigator thereof."

Counsel for appellant conceded in the course of oral argument upon the briefs that *Vesey, supra,* provides us with a correct statement of the law in Ohio on the subject. To avoid its obvious effect upon his case, appellant submits that the Court of Appeals for Lucas County followed its pronouncement quoted above with this caveat:

"Nevertheless, fraud or unlawful means in securing a conviction which is subsequently reversed on appeal may be shown for the purpose of negating the existence of probable cause as shown by the conviction." *Id.*

We are convinced that *Vesey* v. *Connally, supra,* sets forth a reasoned analysis of the law as given both in cases and textworks, and we adopt the precepts and conclusions therein for the purposes of this decision.

Accordingly, we have searched the record to determine whether there is any substance to appellant's conjecture that his convictions were secured by fraud or unlawful means. The court of common pleas performed the same task when deciding the motions for summary judgment. It found no evidence of fraudulent or perjured testimony or any undue or unfair means by which the prosecution convicted Courtney. Our search reaches the same result.

The complaint alleges, in addition to the claim resting on malicious prosecution, claims of false arrest and false imprisonment. Fundamentally, Courtney argues that the reversal of his convictions demonstrates, conclusively, that probable cause to support the charges never existed. This, coupled with what Courtney sees as ulterior motives by the police and the prosecutor, is given to us as the basis for a conclusion that summary judgment was granted improvidently because there was a genuine issue of fact about whether undue or unfair means were employed by Courtney's adversaries.

In general, false arrest and false imprisonment as claims are indistinguishable; the only possible difference stems from the manner in which they originate. See *Kaiser* v. *Procter & Gamble Co.* (Feb. 10, 1988), Hamilton App. No. C-860832, unreported. There is, however, a distinction between false arrest/false im-

prisonment and malicious prosecution. The former claims involve injury to personal liberty while the latter rests upon the infringement of an individual's right to reputation. For our purposes here, we treat the concepts of false arrest and false imprisonment as identical.

We hold that the law which governs the resolution of the question whether summary judgment is proper in regard to such claims was set forth accurately by the Court of Appeals for Franklin County in *Espy* v. *Sears, Roebuck & Co.* (1976), 2 O.O. 3d 91, 92:

"A guilty finding in a criminal proceeding, whether by trial or plea, constitutes an absolute defense to an action for false arrest or false imprisonment."

This holding by our brothers in the Tenth District has its roots in a decision of this court handed down a half-century ago, *Ryan* v. *Conover* (1937), 59 Ohio App. 361, 26 Ohio Law Abs. 593, 11 O.O. 565, 18 N.E. 2d 277.

Our adoption of the holding in *Espy* v. *Sears, Roebuck & Co., supra,* our holding in *Ryan* v. *Conover, supra,* and the thrust of *Vesey* v. *Connally, supra,* result in the conclusion that the court did not err in determining that the defendants-appellees were entitled to judgment as a matter of law with respect to the claims for false arrest and false imprisonment.

The claim that the city of Blue Ash was negligent in hiring its chief of police and the police officers named as defendants is given short shrift in appellant's brief. To the extent that a two-sentence allusion to it poses it as a question to be addressed pursuant to App. R. 12, we hold the court did not err in granting summary judgment thereupon because the record is devoid of any basis upon which reasonable minds could find the city to be guilty of negligent hiring.

The claim of appellant against the Hamilton County Communication Center and Maurice Wesselmann for negligent failure to produce evidence is groundless.

Without question, the incidents giving rise to the controversy *sub judice* began about 11:30 p.m., January 27, 1982, and culminated within the following twenty-four hours.

The subpoena which Courtney, representing himself, issued was for production of recordings of transmissions for twenty-four hours commencing at midnight, January 29, 1982.

Even if Courtney's speculation that a car similar to his was involved in an attempted kidnapping in Blue Ash at about 9:00 p.m., January 28, 1982, and that such similarity prompted Blue Ash police to seize his car on suspicion is taken as true, the fact remains that he inserted incorrect dates in the subpoena. The events upon which Courtney believes he is entitled to rely in his action sounding in negligence occurred after the impounding of his car and, therefore, the tapes could provide nothing material to his case. There is nothing in this record to demonstrate the existence of a genuine issue of material fact with respect to the claim and summary judgment was granted properly.

For the reasons given, we find that neither the first nor the second assignment of error is well-taken, and they are overruled.

The judgment of the Hamilton County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., SHANNON and UTZ, JJ., concur.