48 F.3d 1238
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 DAMPER DESIGN, INC., Eagleair, Inc. (Division of Damper
Design, Inc.) and Donald K. Hager, Plaintiffs-Appellees,
v.
CLEVELAND ELECTRIC ILLUMINATING CO., Landy Chung and Vulcan
Combustion Inc., Defendants,
and
James H. Tilberry, Sanctioned Party-Appellant.
 No. 94-1223.
 United States Court of Appeals, Federal Circuit.
 Feb. 21, 1995.
Rehearing Denied April 5, 1995.
 
 REVERSED.
 Before ARCHER, Chief Judge, NIES and LOURIE, Circuit Judges.
 NIES, Circuit Judge.
 
 
 1
 James H. Tilberry appeals from a post-judgment sanction order under Fed.R.Civ.P. 37, 18 U.S.C. Sec. 401 and the court's inherent authority, against him personally in favor of plaintiff Damper Design, Inc., awarding $197,912 for plaintiff's attorney's fees. We conclude that the sanctions imposed constitute an abuse of discretion and reverse.
 
 DISCUSSION
 
 2
 Appellant Tilberry had handled patent prosecution for CEI for many years. He was brought into the case during part of the proceedings because of his experience as a patent practitioner to assist trial counsel of Chung, who was an employee of CEI. The judgment was rendered solely against Tilberry based on two charges of violating a protective order and one charge of failure to produce a document.
 
 
 3
 1. Violation of April 3, 1986, Protective Order
 
 
 4
 a. The Hagar Deposition.
 
 
 5
 The court held that Tilberry violated the April 3, 1986, protective order by using information he acquired during discovery for the purpose of prosecuting the Chung patent application, in which CEI retained a shop right. Tilberry admits that he reviewed the Hagar depositions for potential reference in the first Office Action and that he found nothing useful and used no information from Hagar in the Chung prosecution. He maintains that if he had wanted to use information from the Hagar deposition, he would have followed paragraph 10 of the protective order and sought removal of its confidentiality. The response he filed in the Chung application changed the word "convolute" to "arcuate." The court stated:
 
 
 6
 Whether or not Tilberry actually incorporated that information, this use [of the Hagar deposition] was clearly beyond the scope of the litigation and, therefore, a violation of the protective order.
 
 
 7
 We find this goes too far. An attorney cannot be sanctioned for merely private thinking unaccompanied by overt action. The court perhaps viewed the "act" as the change in wording in the Chung application. Hagar had used the word "convolute" in connection with the Hagar invention of the '216 patent during his deposition. However, it is undisputed that Mr. Tilberry had also used "convolute" to characterize a feature of the Hagar patent many times before the deposition. This "act" is a phantom not a form.
 
 
 8
 b. The Burns-McDonnell Report.
 
 
 9
 There is no dispute that the above report, dated January 9, 1985, was prepared for CEI and was discussed by personnel of the company, including Chung and with their patent counsel, Tilberry. CEI disclosed the report to plaintiff under the April 3, 1986, protective order. The report contained favorable test results in comparing the Chung air register with Hagar's. On September 9, 1986, Tilberry filed a response in the Chung application referencing a head-to-head test where the air register of the application was found superior in about 15 categories. This information was verified by a Chung affidavit. The information was not obtained by Tilberry by reason of the discovery process.
 
 
 10
 The court ruled that the ordinary rule that a party could use its own protected information for ordinary business purposes, see In re Rafferty, 864 F.2d 151, 155 (D.C.Cir.1988), did not apply because of the defendant's infringement. Again, we disagree. Under the terms of the protective order itself [p 15] the restrictions against use by CEI, Chung or Tilberry did not apply. As provided therein:
 
 
 11
 15. The restrictions set forth in any of the preceding paragraphs shall not apply to information which (a) was or later becomes public knowledge, not in violation of this Order, or (b) was or later is acquired in good faith from a third party, not a party to this litigation, having the right to disclose such information, or (c) which was or later is discovered independently by the receiving party. (Emphasis added)
 
 
 12
 Moreover, even without this explicit paragraph, the denial of use of one's own information could well be precluded by Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984) (First Amendment limits apply to protective orders).
 
 
 13
 2. The "File Wrapper"
 
 
 14
 The court held that Tilberry failed to respond in good faith to a series of discovery requests and ultimately disregarded the court order to produce the file wrapper for the Chung patent application, which he did not produce until November 1987. The court ruled that a request for the file wrapper of a patent application is the prosecuting attorney's file which contains correspondence and drafts of submissions to the Patent Office. This is clearly error. The file wrapper is the official government file which does not include an attorney's work product.* The file became available upon issuance of the Chung patent on July 21, 1987.
 
 
 15
 In any event, the court imposed sanctions for violation of at best an ambiguous discovery protocol. Damper sought a prohibition against deposing Hagar until the defendants provided requested discovery simultaneously. On May 12, 1986, the court wrote: "Motion denied. Written discovery responses and deposition of plaintiff Hagar shall proceed forthwith. SO ORDERED." Tilberry argues that thereafter Damper and Defendants operated on a discovery protocol by which Damper's request for the Chung file wrapper was held in abeyance until Hagar fully disclosed his trade secrets by both interrogatories and deposition (stage 1), prior to file wrapper production (stage 2). Damper argues that the procedure was (1) disclosure of trade secrets, (2) production of file wrapper, and then (3) deposition of Hagar. We need not decide, however, how the protocol was intended to operate. The imposition of sanctions should only follow the violation of a clear order. Here the most reasonable interpretation of the order favors appellant.
 
 
 
 *
 A request for a file wrapper can be met, for example, by providing access to a party to see the file at the Patent and Trademark Office, which otherwise is confidential