JOURNAL ENTRY AND OPINION
This appeal originally stems from a federal court trade secret action involving an air register used in industrial furnaces and is the latest in a long series of litigation involving the parties. For simplicity, the parties shall be referred to by their proper names.
Damper Design, Inc., one of its divisions, Eagleair, Inc., and its president Donald Hagar (collectively, "DDI") commenced the trade secrets action against Cleveland Electric Illuminating. Co. ("CEI"), its employee Landy Chung, and his company, Vulcan Combustion, Inc. Damper Design, Inc., et al. v. ClevelandElectric Illuminating. Co., et al., United States District Court for the Northern District of Ohio, Eastern Division, Case No. C85-3959. Robert McIntyre, Scott Kahn, George Pilat and the law firm of McIntyre, Kahn and Kruse, L.P.A. ("DDI counsel") represented DDI in the litigation. James Tilberry, a patent attorney, assisted Chung in obtaining an air register patent and appeared as his co-counsel during some of the proceedings in the federal trade secret litigation.
DDI provided its device to CEI and subsequently believed CEI and Chung used its proprietary information to obtain a competing patent. CEI settled the claims against it and DDI ultimately obtained a default judgment against Chung. The federal district court stated it would also entertain a motion for sanctions against his counsel. DDI thereafter filed a motion to obtain sanctions under Fed.R.Civ.Proc. 37 against attorney Tilberry, and his co-counsel, who is not involved in this action, for misconduct allegedly committed during his representation of Chung. DDI argued that Tilberry improperly used a confidential deposition of Hagar in violation of a federal protective order, improperly used a confidential Burns-McDonnell engineering report comparing the devices, and violated a discovery agreement to produce the Chung patent "file wrapper".
The federal district court ultimately granted sanctions against Tilberry in the amount of $197,912.80. At some point thereafter during the litigation, DDI filed a lien against the Tilberry residence, owned by James and his wife, Joanne Tilberry. On appeal, however, the Court of Appeals for the Federal Circuit reversed the order granting sanctions. Damper Design, Inc. v.Cleveland Electric Illuminating Co. (Feb. 21, 1995), 48 F.3d 1238.
Tilberry and his wife ultimately filed this action in the common pleas court against DDI and DDI counsel alleging malicious prosecution and abuse of process in pursuing sanction litigation. The Tilberrys argued DDI and its counsel lacked probable cause to pursue sanctions despite the fact that the federal district court agreed to entertain such motion and had initially awarded them. They also argue that DDI and its counsel used the sanction proceedings to "extort" a settlement against James Tilberry's legal malpractice insurer on a claim assigned to it by Chung following the default judgment against him.
The trial court granted summary judgment against the Tilberrys. They timely appeal raising the following sole assignment of error:
 THE COMMON PLEAS COURT ERRED TO THE PREJUDICE OF PLAINTIFFS IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS IN VIEW OF EVIDENCE IN THE RECORD RAISING GENUINE ISSUES OF MATERIAL FACT AND WHICH PRECLUDED SUMMARY JUDGMENT AS A MATTER OF LAW.
This assignment of error, in each of the five separate subparts argued by the Tilberrys, lacks merit. We shall address the last argument first.
 Introduction
The Tilberrys' fifth argument contends that the trial court should have declined to rule on defendants' motion for summary judgment until the Tilberrys obtained additional materials that were governed by a protective order and sealed by the federal court in the federal trade secret action. Fed.R.Civ.Proc.26(C)(7); Damper Design, Inc., et al. v. Cleveland ElectricIlluminating. Co., et al., United States District Court for the Northern District of Ohio, Eastern Division, Case No. C85-3959.
The case at bar was filed in the common pleas court on October 24, 1995, and removed to the federal district court to commence a second federal case on December 1, 1995. James Tilberry et al. v.Robert McIntyre et al., United States District Court for the Northern District of Ohio, Eastern Division, Case No. 95 CV 2525. Approximately three months later, on March 14, 1995, the Tilberrys filed in the prior federal trade secret case, a request to unseal the record and remove all documents from the 1986 protective order. Their motion alleged that prior oral and written requests for such material in the federal trade secret case had never been ruled on.
The instant case was subsequently remanded by the federal court back to the common pleas court on March 26, 1997. Approximately seven months later in October 1997, defendants filed motions for summary judgment. The Tilberrys thereafter filed a series of three motions for extension of time to respond to the summary judgment motions. None of these motions for extension of time, however, referred to any need for materials from the federal trade secret action.
The trial court granted the first two motions for extension of time to oppose summary judgment. In the order granting the second extension, however, the trial court expressly stated "no further extensions of time." The Tilberrys nevertheless filed a third motion for extension of time, which the trial court denied. The Tilberrys belatedly filed their brief in opposition to summary judgment, after the deadline established by the trial court.
The Tilberrys' brief in opposition, filed January 20, 1998, raised for the first time the argument that the absence of material from the federal trade secret case hindered their ability to oppose summary judgment. The brief was not supported by an affidavit concerning this claim. The brief asserted, after approximately twenty-seven months elapsed from the filing of the case, that the Tilberrys' counsel was now preparing to file a motion for a writ of mandamus in the Federal Circuit directing the federal district court to rule on their request to obtain materials from the federal trade secret case. The Tilberrys made no argument or showing how this proceeding would lead the federal district court to reverse its own prior discretionary ruling granting the protective order in the first place. The trial court granted summary judgment following a reply brief.
After reviewing the record, we find that the Tilberrys have failed to show that the trial court abused its discretion or committed any error by ruling on the motion for summary judgment. First, a request for an extension of time should be made by separate motion. See Stegawski v. Cleveland Anesthesia Group,Inc. (1987), 37 Ohio App.3d 78, 86-87. The Tilberrys' brief in opposition to summary judgment did not constitute such a motion and did not even request an additional extension of time. Moreover, even when such a request is raised in a proper motion, courts may summarily overrule requests for continuances if they are not supported by affidavit as in the case at bar.[1] Id.; State exrel. Coulverson v. Ohio Adult Parole Authority (1991), 62 Ohio St.3d 12,14. By failing to follow proper procedure, the Tilberrys did not preserve this claim of error. Stegawski, supra at 87.
Even if the claim were properly preserved and we construed the brief in opposition as a request for additional time, however, the trial court did not abuse its discretion by ruling on the motion for summary judgment. The Tilberrys raised their argument concerning the necessity of materials from the federal trade secret action f or the first time after the established deadline to oppose summary judgment. The case had been pending for approximately twenty-seven months, the trial court had already granted two extensions of time, and had already stated it would grant "no further extensions of time." It was not required to grant the third motion or fourth, if we were to construe it as such, in the brief in opposition.
The trial court could properly find that the Tilberrys did not diligently pursue their remedies concerning the disclosure of these materials in the federal district court or Court of Appeals for the Federal Circuit. Specifically, in his appeal to the Federal Circuit, Tilberry did not challenge the 1986 protective order as it applied to him in the sanctions litigation. Moreover, after filing the case at bar, the Tilberrys then waited months to seek the material in the federal court and years to consider filing a mandamus action in an attempt to review the federal court's original discretionary ruling.
Neither the trial court nor this court could provide any remedy or otherwise rule upon the propriety of the federal district court's action concerning the materials in the federal trade secret action.[2] The litigation in the federal trade secret proceedings had already spanned fourteen years. With no end to the litigation near or in sight, the trial court was not required to stay its proceedings indefinitely to satisfy the hope that something useful in this case would be obtained from the federal action. Nor was a stay required when the Tilberrys had made no specific showing, by affidavit or otherwise, that any of the materials in the federal trade secret action would support its claims.
 Malicious Prosecution,
The Tilberrys' first argument challenges summary judgment on their malicious prosecution claim. To support a claim for malicious prosecution, the plaintiff must show: (1) malicious institution of prior proceedings against the plaintiff by defendant, (2) lack of probable cause for the filing of the prior lawsuit, (3) termination of the prior proceedings in plaintiff's favor, and (4) seizure of plaintiff's person or property during the course of the prior proceedings. Robb v. Chagrin LagoonsYacht Club, Inc. (1996), 75 Ohio St.3d 264, syllabus (citations omitted.)
Their first argument concerns the lack of probable cause element. The determinative issue for purposes of this argument is not whether Tilberry committed a sanctionable offense in the federal trade secret case, but whether there was
 "`[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [was] guilty of the offense with which he [was] charged * * *.'"
Huber v. O'Neill (1981), 66 Ohio St.2d 28, 30 (quoting Ash v.Marlow (1851), 20 Ohio 119, syllabus paragraph one.)
The Tilberrys contend that defendants failed to produce evidence they had sufficient probable cause to initiate and maintain the federal court sanction proceedings.[3] They emphasize that, although the federal district court originally granted the motion for sanctions against James Tilberry, the appellate court subsequently reversed its ruling as "an abuse of discretion." They contend that the reversal on appeal, together with various other assertions, evinces a lack of probable cause for requesting sanctions.
We faced an analogous issue in Adamson v. May Co. (1982),8 Ohio App.3d 266. In Adamson, this court recognized that a rebuttable presumption of probable cause may be supported by a prior judicial finding. Id. at 268. We have subsequently applied this principle in the context of a malicious prosecution claim even when the suspect is later acquitted of the charges. E.g.,Deoma v. Shaker Heights (1990), 68 Ohio App.3d 72.
Claims in civil cases are different from those in criminal cases, because there is ordinarily no preliminary finding by a grand jury or judicial officer of probable cause to support the claims. This case is no different in that respect. The motion for sanctions against Tilberry, however, followed the entry of a default judgment sanction arising from related discovery disputes. The Tilberrys' brief in opposition to summary judgment stated, moreover, that the federal court's order granting the default indicated the judge would entertain a motion for sanctions. Finally, we also note the record does not indicate that Tilberry ever sought summary disposition of the subsequent sanction charges against him by contending they had no factual support.
The federal district judge ultimately found on the merits in favor of defendants and against Tilberry. Whereas the Tilberrys emphasize that the judgment imposing sanctions against Tilberry was reversed, defendants emphasize that the related default judgment arising out of the same conduct was not. It is well established, even in the authority cited by the Tilberrys, that reversal of a judgment on appeal does not, by itself, dictate that there was no probable cause to raise the underlying claims.E.g., Vessey v. Connally (1960), 112 Ohio App. 225.
As noted in Adamson, the presumption of probable cause to institute an action is not rebutted unless the claimant shows the prior proceedings received "perjured testimony or were otherwise significantly irregular." Id. at 268. The Tilberrys cite additional cases which they contend permit them to make a lesser showing of "undue or unfair means," "fraud or unlawful means," or "impropriety." Vessey v. Connally, supra; Courtney v. Rice
(1988), 46 Ohio App.3d 133; and Domon v. Vodicka (Feb. 28, 1985), Cuyahoga App. No. 48437, unreported, respectively. Regardless of what precise terminology is used, however, the Tilberrys have failed to show that any of the kind of significant irregularity occurred in the federal court to rebut the presumption of probable cause in this case.[4]
The Tilberrys' principal argument is that the proceedings in the federal district trade secret case were closed to the public and certain documents and testimony were placed under seal and/or a protective order, which hampered Tilberry's defense of the sanction motion. The Court of Appeals for the Federal Circuit reviewing the judgment of sanctions against him, however, did not provide any support whatsoever for this claim. Damper Design,Inc. v. Cleveland Electric Illuminating Co. (Feb. 21, 1995), 48 F.3d 1238. The record discloses nothing other than that the federal court proceedings were typical of cases involving trade secret claims where non-disclosure is ordered to preserve the alleged trade secrets.
While such rulings may hinder disclosure or use of protected information, the federal and Ohio civil rules expressly grant trial courts to make such discretionary rulings. Fed.R.Civ.Proc.26(C)(7); Civ.R. 26(C)(7). Because the Tilberrys failed to allege or show that perjured testimony or any other kind of significant irregularity occurred in the federal trade secret action to lead to the sanctions award against him, the presumption of probable cause remains unrebutted, and the summary judgment of the trial court must be affirmed.
Even if we were to examine the issue of probable cause without this presumption as the Tilberrys request, however, defendants were still entitled to judgment as a matter of law. The argument between the parties in the federal trade secret case boiled down to disputed conclusions to be drawn from undisputed events. The Tilberrys failed to show that any defendant lacked probable cause, that is, "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [was] guilty of the offense with which he [was] charged * * *."
The Tilberrys complain that defendants alleged Tilberry improperly "used" the Hagar deposition in violation of a confidentiality order, when, by his own version, he merely "read" it.[5] Tilberry admittedly changed a term in the Chung patent application from "convolute" to "arcuate" after the patent office rejected the application based on Hagar's prior patent. Hagar used the word "convolute" in the deposition. Although the Court of Appeals for the Federal Circuit ultimately held that Tilberry's conduct involved a permissible thought process, rather than an impermissible violation of a discovery order, id., its judgment did not mean that defendants lacked a reasonable ground of suspicion for their allegation.
The Tilberrys also argue that defendants lacked probable cause to claim Tilberry violated the federal court discovery order by using the Burns-McDowell engineering report, which compared Chung's air register to Hagar's device. The Federal Circuit held that the report was disclosed to Tilberry before the federal trade secret litigation so that his use of it did not violate the discovery order. Id. The relevant question in the case at bar, however, is not whether Tilberry committed a sanctionable offense in the federal trade secret case, but whether there was a reasonable suspicion that he did.
While Tilberry admittedly received the report before the litigation, there was some question concerning the capacity in which he received it. Defendants argued in part that Tilberry violated the protective order by using the report on behalf of Chung when CEI provided it to him for its own purposes. The federal district court held that its protective order was violated. Even though ultimately reversed on appeal, its judgment did not mean that defendants lacked reasonable grounds of suspicion for the allegation.
The Tilberrys' final argument concerns the disclosure of the Chung patent "file wrapper." The Federal Circuit recognized that the patent "file wrapper" includes attorney work product and that parties are not typically required to disclose such material from the patent prosecution. Id. It held, however, that the discovery protocol allegedly violated in this case was ambiguous. Id. Under the circumstances, such ambiguity negates Tilberry's claim that there were no reasonable grounds of suspicion that he violated the order.
The Tilberrys' remaining contention concerning probable cause relates solely to the attorney defendants. Citing Woyczynski v.Wolf (1983), 11 Ohio App.3d 226, the Tilberrys argue that there is a lesser standard for demonstrating that attorneys filed a claim with a lack of probable cause.
Woyczynski held that to demonstrate a lack of probable cause against an attorney on a claim of malicious prosecution, the plaintiff must show the attorney lacked either a good-faith basis for believing that the proceeding was warranted under existing law or a good-faith argument for extension, modification, or reversal of existing law. Id. at 229. As a result of our review in compliance with this standard, we find that the Tilberrys failed to show any DDI counsel lacked probable cause to support the sanction claims.
Although the Tilberrys may have shown that the defendant attorneys engaged in an aggressive litigation strategy, they have produced no evidence whatsoever that the defendant attorneys lacked a good faith basis to make any arguments they presented. Tilberry did not request the Federal Circuit to make such a ruling, nor did it. The fact that the arguments of DDI counsel did not ultimately prevail does not mean that they lacked a good faith basis to have made them. These same principles apply to the Tilberrys' argument in this appeal. Although we are not persuaded by them, we nevertheless find counsel had "reasonable grounds for this appeal." Infra at 21.
The Tilberrys' second and third arguments relate to the necessity of proving the "seizure" element of malicious prosecution claims. However, because we find that the Tilberrys failed to produce sufficient evidence to support their claim that defendants lacked probable cause, the second and third arguments are moot. We, therefore, decline to address them, pursuant to App. R. 12(A)(1)(c)
 Abuse of Process
The Tilberrys' fourth argument challenges the trial court's grant of summary judgment on their abuse of process claim. To recover on a claim of abuse of process, plaintiffs must show: (1) that a legal proceeding has been set in motion in proper form and with probable cause, (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) that direct damage resulted from the wrongful use of process. Yaklevich v. Kemp, Schaeffer Rowe Co., LPA
(1994), 68 Ohio St.3d 294, 298.
The parties' dispute under this argument focuses on the existence of the second element in the case at bar. The Tilberrys contend they presented sufficient evidence to raise a question of fact whether defendants pursued their Fed.R.Civ.Proc. 37 motion for sanctions for an "ulterior" purpose. Specifically, they argue that defendants improperly pursued the sanctions claim against Tilberry in the federal court action to enable them to "extort" a settlement from his malpractice insurer.
It should be noted that both the sanctions claim and the malpractice claim arose from the same underlying facts, that is, the alleged discovery violations in the federal trade secret case. Because of the discovery violations, the federal district court entered a default judgment against Chung, Tilberry's former client, and later entered the sanctions award against Tilberry.
The events are briefly summarized as follows: On August 7, 1987, the trial court entered the default judgment against Chung and his company. Approximately seven months later, in March 1988, Chung entered into a settlement with DDI and assigned his patent and part of his resulting malpractice claim against Tilberry, arising from Tilberry's representation prior to the default judgment against Chung. Thereafter, on March 21, 1988, attorney McIntyre, acting as counsel for Chung, sent Tilberry a letter notifying him of the malpractice claim and instructing him to contact his malpractice insurer.
On April 7, 1988, DDI filed its motion for sanctions against Tilberry in the federal district court. After approximately three years of litigation, on July 29, 1991, the federal judge found Tilberry liable for sanctions and referred the matter to a magistrate to determine the amount of the award. Thereafter, on October 15, 1991, attorney McIntyre sent Tilberry's malpractice insurer a letter seeking, on behalf of DDI, to negotiate a settlement on the sanctions liability judgment against Tilberry. On February 9, 1994, the federal district court awarded DDI $197,912.80 in sanctions against Tilberry.
Tilberry's malpractice insurer, American Insurance Group, settled the claims against him. The Tilberrys' three-paragraph argument on appeal contends that the above two letters from attorney McIntyre constitute evidence that defendants filed the motion for sanctions against Tilberry to "extort" a settlement from Tilberry's malpractice insurer.
It is well settled, contrary to the Tilberrys' argument, that a threat to pursue a civil action, even if such action would be entirely frivolous or brought in bad faith, does not constitute extortion. E.g., Heights Community Congress v. Smythe, Cramer Co.
(N.D. Ohio 1994), 862 F. Supp. 204, 207 (citing I.S. Joseph Co.,Inc. v. J. Lauritzen A/S (8th Cir. 1984), 751 F.2d 265, 167-268.) The court characterized as "absurd" the related contention that the filing of a lawsuit constituted "extortion." Id. Thus, even on its own terms, the Tilberrys' argument lacks merit. For all the harsh rhetoric, Tilberry has not produced any evidence that the "real" purpose of pursuing either the sanctions claim or malpractice claim was something other than to recover on each claim respectively.
In Yaklevich, the Ohio Supreme Court specifically recognized, contrary to the Tilberrys' argument, that "there is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id. at n. 2 p. 301. After reviewing the record, we conclude that the Tilberrys failed to present evidence that "defendants have done anything more than carry out the process in the federal court to its authorized conclusion." Their fourth argument lacks merit.
Accordingly, the Tilberrys' sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee(s) recover of appellant(s) their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J., and ANNE L. KILBANE, J., CONCUR.
 ______________________________ DIANE KARPINSKI PRESIDING JUDGE
[1] Tilberry filed a "Declaration, "which recites most of his claims, but it was not made under oath. It asserts that unspecified information exists in sealed transcripts, letters and depositions, but does not identify or describe any specific information. Counsel for the Tilberrys submitted an affidavit which purported to authenticate the declaration and various documents from the federal trade secret litigation.
The trial court was not required to consider any of this material because the brief was untimely filed. Although DDI counsel also objected to the consideration of this material, and it may provide an additional ground for affirming the judgment of the trial court, we address the Tilberrys' argument on the merits in the following sections.
[2] We note that the Tilberrys did not assign as error the trial court's order staying discovery in the case at bar after the case was remanded from the federal court.
[3] It is undisputed that none of the defendants instituted prior proceedings of any kind against plaintiff Joanne Tilberry.
[4] Vessey states that the claimant must show the finding was brought about by "fraudulent or perjured testimony, or through undue or unfair means." Id. at 229. Domon cites Vessey for the proposition that the finding must have been "obtained in a fraudulent or unlawful means, e.g., through perjured testimony."Id. at 2. Although Domon later used the term "impropriety," it was a shorthand way of reiterating the standard already stated and, contrary to what the Tilberrys contend, did not further dilute the standard.
[5] The Tilberry Declaration does not contain any information concerning this issue. It is well established that a party may not rely solely on its allegations and must produce evidence, to defeat a properly supported motion for summary judgment.